THOMAS FORBUSH[1] & another[2] *vs.* CITY OF LYNN.

No. 92-P-739.

Essex. May 14, 1993. - January 4, 1994.

Present: BROWN. KASS. & LAURENCE. JJ

*Statute*, Construction. *Massachusetts Tort Claims Act. Negligence*, Municipality. *Municipal Corporations*, Liability for tort. *Wanton or Reckless Conduct. Intentional Conduct.*

Discussion of the distinction between wilful, wanton or reckless conduct and intentional conduct in the context of tort liability, as delineated in cases, statutes, and treatises. [699-702]

Wilful, wanton or reckless conduct by a municipality that resulted in serious personal injury to a child while he played on public recreation land was not conduct for which the municipality was immune from liability under the intentional tort exception to the Massachusetts Tort Claims Act set forth at G. L. c. 258, § 10(*c*). [702-704]

CIVIL ACTION commenced in the Superior Court Department on November 9, 1990.

The case was heard by *John T. Ronan*, J., on a motion for summary judgment.

*Sharon D. Meyers* for the plaintiffs.

*George S. Markopoulos*, Assistant City Solicitor, for the defendant.

LAURENCE, J. Should a municipality be immune from tort liability to a child who was seriously injured while playing on a public playground as a result of the municipality's wilful, wanton or reckless conduct? A Superior Court judge construed our statutes to require an affirmative answer to this question and granted summary judgment to the defendant municipality. We disagree with that conclusion and reverse.

---

[1]By his mother and next friend, Susan Forbush.

[2]Jennifer Forbush, by her mother and next friend, Susan Forbush.

Seven year old Thomas Forbush was playing on a broken swing at the Keaney Playground, a facility owned and operated by the city of Lynn, on July 19, 1989. The playground was open to the public for recreational use without charge. While sliding down the broken swing chain, Thomas was impaled on a large hook at the end of the chain, which became embedded in his groin. His ten year old sister, Jennifer, responded to his screams as he dangled on the hook and helped him off the chain to medical assistance. In November, 1990, Thomas and Jennifer, by their mother and next friend, commenced suit against the city, after proper presentment. They alleged that the city's negligence in various respects relating to the operation of the playground had caused Thomas's physical injuries and both plaintiffs' emotional distress.

The city answered and, on March, 2, 1991, moved for summary judgment. The bases of the motion were the so-called recreational use statute, G. L. c. 21, § 17C,[3] and the Supreme Judicial Court's decision in *Anderson* v. *Springfield*, 406 Mass. 632 (1990). *Anderson* had held that § 17C applied to municipalities and other governmental entities to the same extent as to private landowners. *Id.* at 634. While acknowledging its responsibility for maintaining and operating the playground, the city nonetheless contended that it was entitled to summary judgment under § 17C because the plaintiffs had not alleged any wilful, wanton or reckless conduct (the § 17C liability standard) on the city's part.

Hurriedly filing a motion to amend their complaint to add such an allegation, the plaintiffs also opposed the city's mo-

---

[3]General Laws c. 21, § 17C, as inserted by St. 1972, c. 575, provides, in pertinent part:

"An owner of land who permits the public to use such land for recreational purposes without imposing a charge or fee therefor, or who leases his land for said purposes to the commonwealth or any political subdivision thereof *shall not be liable to any member of the public* who uses said land for the aforesaid purposes for injuries to person or property sustained by him while on said land *in the absence of wilful, wanton or reckless conduct by such owner,* nor shall such permission be deemed to confer upon any person so using said land the status of an invitee or licensee to whom any duty would be owed by said owner. . . ." (Emphases added.)

tion with extracts from depositions of two city employees involved in operation of the playground. The depositions indicated that sometime in June, 1989, a playground "instructor" had, as part of his duties, inspected and assessed the condition of the playground. At that time the instructor had filed a report of his findings with his superiors in the appropriate city department charged with repairing or replacing damaged playground equipment. His report had specifically included, among other unsafe conditions, the defective swing on which Thomas subsequently was injured. No effort was thereafter undertaken by any city employee to repair or replace the swing or post any warning.

After hearing, the judge allowed the city's summary judgment motion, superscribing thereon the handwritten notation: "[I]t appearing that [G. L. c. 21, § 17,] applies and there can be no recovery for wilful, wanton and reckless conduct under [c.] 258." Implicit in the judge's determination appear to be (a) a ruling that the plaintiffs had sufficiently alleged, or could properly allege on the evidence presented, that the city acted wilfully, wantonly or recklessly with respect to the faulty swing[4] and (b) a legal conclusion that the city was nonetheless immune because its actions as alleged were the equivalent of an "intentional tort," for which there is no liability under the Massachusetts Tort Claims Act, G. L. c. 258, § 10(*c*).[5] The plaintiffs appeal from the judge's implicit

---

[4]By the judge's implicit recognition of the propriety of the plaintiffs' motion to amend their complaint to include allegations of the city's wilful, wanton or reckless conduct, he appears to have rejected the city's objection below that the amendment was improper because the plaintiffs' presentment letter did not state a claim against the city based on such conduct. Although the city's appellate brief contains one sentence stating the fact of the allegedly defective presentment, the city presented no legal argument regarding the subject either to the judge or on appeal, and we need not address the issue. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Jensen* v. *Essexbank*, 396 Mass. 65, 67 (1985).

[5]Section 2 of the Massachusetts Torts Claims Act, G. L. c. 258, as inserted by St. 1978, c. 512, § 15, provides in pertinent part:

"Public employers shall be liable for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any public employee while acting within the scope of his

conclusion that a municipality's "wilful, wanton or reckless" conduct is excluded as a basis for liability under G. L. c. 258, § 10(*c*).

We agree with the plaintiffs' contention that "reckless" conduct[6] should not be equated with the intentional torts which § 10(*c*) exempts from the coverage of the Massachusetts Tort Claims Act. It is true that *Commonwealth* v. *Welansky*, 316 Mass. 383 (1944), relied upon by the city, contains the frequently quoted observations that "[t]he essence of wanton or reckless conduct is intentional conduct" and "[w]anton or reckless conduct is the legal equivalent of intentional conduct." *Id.* at 399, 401. See, e.g., *Tilton* v. *Franklin*, 24 Mass. App. Ct. 110, 112 (1987). No Massachusetts appellate decision, however, has expressly declared that reckless tortious conduct causing harm to another constitutes, per se, an intentional tort falling within the § 10(*c*) exclusion.[7]

Such an equation would be inappropriate in this case for several reasons. First, we have been enjoined to read the intentional tort exception of the Massachusetts Tort Claims

---

office or employment, in the same manner and to the same extent as a private individual under like circumstances . . . ."

General Laws c. 258, § 10(*c*), as inserted by St. 1978, c. 512, § 15, excludes from § 2:

"any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations . . . ."

[6]For the sake of brevity, we will hereafter state the § 17C liability standard as "reckless" conduct. See *Manning* v. *Nobile*, 411 Mass. 382, 387 n.8 (1991) ("The terms 'wilful,' 'wanton,' and 'reckless' are often used interchangeably. Nothing turns on the absence of one or another of these terms"). See also *Gauvin* v. *Clark*, 404 Mass. 450, 451 n.2 (1989); Restatement (Second) of Torts § 500 special note (1964); Prosser & Keeton, Torts § 34, at 212 (5th ed. 1984).

[7]*Tilton* v. *Franklin*, 24 Mass. App. Ct. at 112-113, which was not cited by the city but which held that a claim against a town for "reckless" infliction of emotional distress was barred by § 10(*c*), is not such a decision. That opinion relied on the fact that Massachusetts precedent had already authoritatively equated reckless infliction of emotional distress with intentional infliction of emotion distress, a tort specifically listed in § 10(*c*).

Act narrowly against public entities asserting it. See *Doe* v. *Blandford*, 402 Mass. 831, 837-838 (1988); *Ortiz* v. *Hampden*, 16 Mass. App. Ct. 138, 138-140 (1983). This principle of restricting the scope of exclusions from the Act flows from the Legislature's original instruction that the provisions of the Act be "construed liberally." St. 1978, c. 512, § 18. Liberal construction of the Act was mandated in order to achieve its overriding dual purposes: eradicating the logically indefensible doctrine of sovereign immunity and replacing it with a statutory mechanism that facilitated recovery by plaintiffs with valid causes of action against government tortfeasors. See *Irwin* v. *Ware*, 392 Mass. 745, 768-769 (1984).

Revealed through the lens of liberal construction would be Massachusetts law's recognition of the difference between the intention to commit an act which involves a high degree of likelihood that substantial harm may result to another (reckless misconduct) and the intention to cause that harm (intentional misconduct). The Restatement of Torts has usefully delineated that distinction:

> "*Intentional misconduct and recklessness contrasted.*
> Reckless misconduct differs from intentional wrongdoing in a very important particular. While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from facts which he knows, should realize that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results."

Restatement (Second) of Torts § 500 comment f (1964). See *Commonwealth* v. *Welansky*, 316 Mass. at 399; *Sheehan* v. *Goriansky*, 321 Mass. 200, 204 (1947). See also Restate-

ment (Second) of Torts § 8A comment b; Prosser & Keeton, Torts § 8, at 36, & § 34, at 212 (5th ed. 1984).[8]

Most pertinently, the distinction between an "intentional tort" and "wilful" wrongdoing is reflected in the Massachusetts Tort Claims Act itself. See G. L. c. 258, § 9. It is a discrimination that is consistent with legislative practice. In creating and modifying liabilities and immunities, the Legislature has been differentially precise in specifying when it wanted standards of liability to be based on "intentional" conduct, see G. L. c. 231, §§ 85S(*c*), 85V, & 85W, rather than on "wilful, wanton or reckless" conduct, as in §§ 85K, 85R, & 85T; or on "gross negligence" (§§ 85V & 85W); or on "ordinary negligence" (§ 85L).

Under our principles of statutory interpretation, we must, therefore, be differentially precise in according discrete, and not identical, meanings to the several standards in construing our statutes as a consistent, harmonious body of law. See *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1976); *Catlin* v. *Board of Registration of Architects*, 414 Mass. 1, 4-5 (1992); *Healey* v. *Commissioner of Pub. Welfare*, 414 Mass. 18, 24-25 (1993); *Marco* v. *Green*, 415 Mass. 732, 735-736 (1993). Such precise differentiation

---

[8]This distinction between reckless and intentional conduct has been most recently discussed by the Supreme Judicial Court when asked to determine whether "a finding of willfulness under the [Federal] Age Discrimination in Employment Act . . ., if based on a [jury] finding of 'reckless disregard . . .' [on the part of the insured discriminator], constitute[s] 'deliberate or intentional . . . wrongdoing' such as to preclude indemnification by an insurer" under Massachusetts public policy as codified in G. L. c. 175, § 47 Sixth(*b*). In *Andover Newton Theological Sch., Inc.* v. *Continental Cas. Co.*, 409 Mass. 350, 351-352 (1991), the court answered in the negative:

"The fact that a wrongful act was committed intentionally . . . does not alone bar coverage. That bar arises only if an intentionally committed, wrongful act was also done deliberately or intentionally, in the sense that the actor knew that the act was wrongful. Therefore, although reckless disregard as to the lawfulness of one's conduct may be wilful conduct for the purposes of the ADEA, and for other purposes . . ., it . . . is not deliberate or intentional wrongdoing. Indifferent or reckless wrongdoing is not deliberate or intentional wrongdoing." *Id.* at 352 (citing *Welansky*, *supra*, and *Sheehan*, *supra*).

is particularly appropriate in order to implement the beneficial and remedial purposes intended by the Legislature in enacting c. 258. See *Simon* v. *Solomon*, 385 Mass. 91, 100 (1982); *Dover* v. *Massachusetts Water Resources Authy.*, 414 Mass. 274, 278-280 (1993).[9]

The previously unexamined consequences of the judge's ruling dramatically highlight the unacceptability of treating reckless municipal conduct as falling within the intentional tort exclusion. It is paradoxical enough that the applicability of § 17C to public landowners creates an anomalous distinction between child users of public land — a municipality enjoys a substantially lesser degree of responsibility (refraining from reckless conduct) for the protection of children lawfully playing on public recreational land which they have been affirmatively encouraged to use than it does for the protection of trespassing children who illegally invade "nonrecreational" property owned by the municipality, the essential characteristics of which land may be substantially similar if not identical.[10, 11] The judge's overlay of the intentional tort exclusion of § 10(c) onto his application of § 17C to these circumstances, however, aggravates that unfortunate dichotomy. It renders public landowners who gratuitously allow, or even invite, the use of public lands wholly immune from the liability to such users — however youthful, inexperienced and trusting — to which all other landowners are exposed. Such a drastic, sweeping and (we would warrant) unantici-

[9]The plaintiffs' erroneous contention that reckless conduct is no more than gross negligence also ignores the Legislature's careful choice of words. See *Commonwealth* v. *Welansky*, 316 Mass. at 399.

[10]It is not the nature or quality of the land or the uses to which it is put by its owners, but the nature of the use the public makes of it, i.e., recreational activity, that determines the applicability of G. L. c. 21, § 17C. Cf. *Catanzarite* v. *Springfield*, 32 Mass. App. Ct. 967, 968 (1992).

[11]See G. L. c. 231, § 85Q, inserted by St. 1977, c. 259 (imposing on all landowners a duty of reasonable care toward foreseeable child trespassers who, because of their youth and inexperience, do not appreciate the risk from the existence on the land of an "artificial condition" that the landowner should realize involves an unreasonable risk of serious injury to such children); *Soule* v. *Massachusetts Elec. Co.*, 378 Mass. 177, 182-184 (1979) (recognizing a similar common law duty of reasonable care to prevent harm to foreseeable child trespassers).

pated consequence to the public of exercising their privilege of using public property for its intended public purposes cannot have been contemplated by either the Legislature or *Anderson* v. *Springfield, supra.*[12, 13]

To paraphrase Justice Quirico (when rejecting the claim of immunity by a landowner who refused to assist a helplessly trapped trespasser): "It should not be, it cannot be, and surely it is not now the law of this Commonwealth that the [public land] owner . . . is rewarded with immunity from liability [in these circumstances] . . . . [I]t is unthinkable to have [such] a rule . . . [in light of the] recognition by the law of the ever changing concepts of each individual's rights and duties in relation to all other members of our society, and . . . current standards of concern for the personal safety and well being of each individual." *Pridgen* v. *Boston Hous. Authy.,* 364 Mass. 696, 711 (1974).

The novel rule of absolute immunity inadvertently created by the judge's juxtaposition of G. L. c. 21, § 17C, and G. L. c. 258, § 10(*c*), falls within that rubric. Fortunately, it is not compelled by the statutory language; it is inconsistent with the appropriate construction of those statutes and would be contrary to public policy in significantly undermining the salutary legislative purposes behind each statute. See *Sheehan* v. *Goriansky,* 321 Mass. at 204; St. 1972, c. 575; House No.

---

[12]The rationale of *Anderson* v. *Springfield,* 406 Mass. at 634, was that G. L. c. 258, § 2, put governmental entities "on the same footing" as private tort defendants, which principle the court held should govern the application of G. L. c. 21, § 17C. Any judicially created immunity for public owners of gratuitously provided recreational land, when sued for injuries caused by reckless conduct for which private landowners would be liable under § 17C, would undermine this "equal footing" doctrine.

[13]Cf. *Jacobsen* v. *Rathdrum,* 115 Idaho 266, 269-270 (1988) (interpreting the Idaho recreational use statute to impose at least a "reckless" standard of care on landowners: "Otherwise, the statute would create the anomalous situation that a landowner who directly or indirectly invites or permits without charge a person to use [his] land for recreational purposes would be immune from the liability to which any landowner is exposed as to trespassers. There is no indication in the statute that the legislature intended to abolish a landowner's liability to trespassers. Those who use an owner's land for recreational purposes are entitled to at least the same protection as trespassers are afforded").

5004 (December 1971) (Special Report of the Department of Natural Resources Relative to Public Recreation on Private, County and Municipal Lands as Relates to the Problem of Landowners' Liability); Senate No. 1136 (Jan. 24, 1967) (Legislative Research Council Report Relative to Public Recreation on Private Lands and Landowners' Liability).

For these several reasons, we conclude that the plaintiffs' claims against the city falling within the recreational use statute, G. L. c. 21, § 17C, are not barred by the intentional tort exception contained in G. L. c. 258, § 10(*c*). The judgment is reversed, and the case is remanded to the Superior Court for further proceedings consistent with this opinion.

*So ordered.*