**April M. GRIFFITH, Administratrix of the Estate of Deena Wilson, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 90–40176–MAP.**

United States District Court, D. Massachusetts.

July 19, 1994.

Richard A. Gargiulo, Gargiulo, Rudnick & Gargiulo, Boston, MA, for plaintiff.

Mary Elizabeth Carmody, U.S. Attorney's Office, Boston, MA, for defendant.

*MEMORANDUM REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO CERTIFY*

(Docket Nos. 31 & 44)

PONSOR, District Judge.

## I. *INTRODUCTION*

This is a wrongful death action against the United States government for allegedly serving alcohol to an intoxicated minor at the Non–Commissioned Officers Club ("NCO Club" or "Club") on the Fort Devens Army base in Massachusetts. April Griffith, administratrix of Deena Wilson's estate, has brought this action under the Commonwealth's wrongful death statute, Mass.Gen.L. ch. 229, § 2 and pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2674. In three counts, plaintiff has charged the defendant with serving alcohol to a minor in violation of Mass.Gen.L. ch. 138, § 34 (Count I), serving alcohol to an intoxicated person in violation of Mass.Gen.L. ch. 138, § 69 (Count II), and breach of its duty of care by not providing adequate security, supervision and management at the NCO club (Count III).

The government has moved for summary judgment for three reasons. First, defendant contends that the NCO Club is not licensed under Massachusetts law and is not subject to Mass.Gen.L. ch. 138, § 69. Second, it argues that plaintiff's negligence claims are governed by Mass.Gen.L. ch. 231, § 85T, which bars claims for personal injuries resulting from the negligent service of alcohol to an intoxicated person who causes injury to herself in the absence of wilful, wanton or reckless conduct on the part of the defendant. The government maintains that the conduct of NCO Club employees, even when viewed in a light most favorable to plaintiff, does not rise to the level required by § 85T. Third, defendant contends that Wilson was more than fifty per cent negligent, as a matter of law, and is therefore precluded from recovering damages under the Massachusetts comparative fault statute, Mass.Gen.L. ch. 231, § 85.

In response, plaintiff argues the NCO Club, as a commercial vendor of alcohol, should be held to the same standard that is applicable to licensed taverns. Plaintiff also maintains that comparative negligence does not apply to claims brought pursuant to the wrongful death statute, Mass.Gen.L. ch. 229, § 2, and has filed a motion asking this court to suspend its decision pending certification of this question of law to the Massachusetts Supreme Judicial Court.

For the reasons set forth below, the court will deny defendant's motion for summary judgment in its entirety. However, as to Count I, alleging service of alcohol to an intoxicated person, and Count III, failure to enforce security procedures to control and monitor the distribution of alcohol, the governing standard for evaluating defendant's conduct at trial will be wilful, wanton or reckless. Count II, alleging service of alcohol to a minor will be governed by an ordinary negligence standard. Plaintiff's motion to certify will be denied because it is both premature and does not present a question of first impression.

## II. *FACTUAL BACKGROUND*

The pertinent facts are presented in accordance with the summary judgment standard, Fed.R.Civ.P. 56(c). The following facts are either undisputed or presented in a light most favorable to the non-moving party. *LeBlanc v. Great American Insurance Co.*, 6 F.3d 836, 841 (1st Cir.1993); *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 46 (1st Cir.1990).

The Fort Devens NCO Club is a bar and entertainment establishment oriented towards members of the armed services. The Club is owned by the U.S. Army and operated pursuant to Department of Defense regulations. The Club sells alcoholic beverages and provides live musical entertainment. Membership is restricted to armed forces personnel and certain civilians employed at Fort Devens. Others may enter only as guests and must be accompanied by a Club member.

On June 11, 1988, the Club was governed by the following restrictions and procedures: Civilians had to be at least eighteen years old to gain admittance, and twenty-one (the legal drinking age in Massachusetts) to purchase alcohol. At the entrance, patrons had to show security guards identification that included their name and birthdate. A photo ID was not required. Drinking age patrons had their hand stamped or were provided with a bracelet so the bartenders could distinguish them as eligible to purchase alcohol. Bartenders looked to see if a patron had a stamp or bracelet and at times would "card" persons requesting an alcoholic beverage if they suspected that they were under twenty-one. NCO Club regulations required that all alcohol consumed on the premises be purchased from the bar. No one was permitted to bring bottles or containers of alcohol into the club.

Strong evidence indicates that, at least prior to June 11, 1988, these security procedures were less than adequate. Often, underage civilian youths illegally purchased or consumed alcohol while socializing as guests at the Club. These problems were detailed in a letter written before June 11, 1988 to NCO Club management from Sergeant Casimer Wozniak, a bartender at the Club. Wozniak stated that minors and youths under twenty-one routinely gained admittance with credit cards and like identification that did not contain their birthdate. Wozniak detailed repeated instances of underage drinking. He complained that the security procedures then in effect did not prevent waiters and waitresses from serving alcohol to underage patrons and estimated that at least eight minors per evening attempted to purchase alcohol from him. Wozniak also criticized management for inadequately training security personnel. Somewhat prophetically, Wozniak concluded his lengthy letter warning that someday a civilian minor would be involved in an alcohol related incident connected to the NCO Club that would result in a suit against the government. Unfortunately, and quite tragically, Wozniak's warnings resulted in no change in procedures.

Deena Wilson, age seventeen, was part of a group of local youths from the nearby town of Ayer, who were regular, if not frequent, visitors at the Club. It is undisputed that many of the bartenders and management personnel at the Club could readily identify Wilson and knew she was under twenty-one. The record does not indicate whether any of defendant's employees knew that she was under eighteen. What is clear is that, on two occasions, Wilson had been suspended from the Club for thirty days for underage drinking. At deposition, Barbara Childress, the Club's assistant manager testified that as recently as April, 1988, she observed Wilson consuming alcohol at the Club. On at least one occasion, the management suspected that Wilson was intoxicated while at the Club. Another time, Wilson passed out on the dance floor. By all accounts, prior to June 11, 1988, Wilson's behavior in the bar was less than acceptable to the NCO Club's management.

On Saturday, June 11, 1991, Wilson and her friend, Cindy Colburn, began an evening of socializing by drinking beer and strawberry daiquiris at Wilson's apartment. Sometime after 9:00 p.m., Wilson, accompanied by Cindy Colburn, drove her boyfriend's car to the NCO Club. Colburn was a civilian employee at Fort Devens and a member of the NCO Club. That evening Wilson was admitted as Colburn's guest. Upon entering the Club, Deena showed the security guards a Florida driver's license belonging to her older sister, Deneen Wilson, who was over twenty-one years old. Following the usual Club procedure, Deena's hand was stamped, signifying that she was able to purchase alcohol. At deposition, Colburn testified that Wilson expressed elation at receiving a hand stamp that permitted her to order alcohol at the bar.

Typically, on a busy Saturday night the NCO Club had more than five security guards on duty checking identification and monitoring the crowd. However, on the Saturday evening of June 11th, despite a large crowd, only two relatively inexperienced security guards were on duty. That night, the Club was so shorthanded that Club manager

Michael Hanson left his office to help with security and bartending.

At least three NCO Club staffpersons on duty that evening knew Wilson. Hanson, assistant manager Barbara Childress, and bartender Casimer Wozniak could readily identify Wilson, knew she was under twenty-one and were aware of her prior run-ins with Club management. The record indicates that the two security guards on duty could not identify Wilson.

The evidence pertaining to Wilson's behavior and demeanor while she was at the NCO Club is contained in Cindy Colburn's deposition. According to Colburn, she and Wilson entered the Club together, but apparently mingled with different people, spending little time with each other. Colburn testified that Wilson consumed an undetermined amount of alcohol before she went to the NCO Club. It was Colburn's opinion that Wilson was not drunk when she arrived at the Club. At the same time, Colburn stated that Wilson was "acting crazy" that evening, dancing wildly and acting very boisterous. Colburn explained that Wilson often acted this way whether drunk or sober. This is the extent of the evidence pertaining to Wilson's behavior and demeanor while she was in the Club on June 11. However, it is uncontested that Wilson ordered at least one drink from the bar that evening. Colburn maintains that bartender Dana Honabach served Wilson this drink. At deposition, Honabach stated that he could not identify Wilson but denied serving her a drink that evening.

Around 11:00 p.m., Wilson left the bar and drove back to her apartment to wait for a long distance phone call from her boyfriend. Colburn left the NCO Club at midnight and went to the VIP Club in nearby Worcester. Sometime before 2:00 a.m., Wilson drove to the VIP Club and was seen in the parking lot looking for Colburn. Wilson drove off without seeing Colburn.

Wilson was killed in a single-car accident during the early morning hours of June 12, 1988 while driving eastbound on Route 2, towards Ft. Devens, in Lancaster, Massachusetts. At the time of the crash, Wilson was operating her boyfriend's car without a valid driver's license. She was severely intoxicated. An autopsy revealed that she had a blood alcohol level of .43% when she died, over four times the legal limit. A half-empty fifth of gin was found in the car wreckage.

## III. DISCUSSION

Pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671 *et. seq.*, the federal government is liable for its tortious conduct in the same manner and the same extent as a private individual under like circumstances. *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). There is no doubt that the FTCA subjects federal entities, such as the NCO Club, to suit for breach of a state's statutory and common law governing the service of alcohol. 28 U.S.C. § 2674; *Skipper v. United States*, 1 F.3d 349, 352 (5th Cir.1993), *cert. denied*, ── U.S. ──, 114 S.Ct. 1220, 127 L.Ed.2d 566 (1994). Plaintiff's claims are therefore governed by Massachusetts law.

### A. *Defendant's Failure to File an Answer to the Amended Complaint.*

Plaintiff charges that defendant may not file a motion for summary judgment until it has filed an answer to the amended complaint. In the context of this case at least, this objection is purely technical. Plaintiff has not asserted that any prejudice has arisen as a result of defendant's failure to file the answer. Moreover, as noted, the court will be denying the Motion for Summary Judgment. In order to insure that the record is clear, however, the court has, in a scheduling order issued this day, set a deadline for the defendant to file its answer.

### B. *Defendant's Duty of Care in Serving Alcohol to an Intoxicated Person.*

Counts II and III charge that the defendant's service of alcohol to a visibly intoxicated person was either negligent or wilful, wanton or reckless. Plaintiff attempts to assert that the negligence standard may be applied through Mass.Gen.L. ch. 138, § 69. This statute is explicitly directed only at "premises licensed under this chapter." Since the NCO Club is not required to be

licensed under Massachusetts law, this statute does not apply.

■ More importantly, a second Massachusetts statute, Mass.Gen.L. ch. 231, § 85T, specifically provides that the "wilful, wanton or reckless" standard is to be applied to claims of service to an intoxicated person. Section 85T provides that an intoxicated person who causes injuries to himself or herself cannot maintain an action against a "person or entity serving alcohol as an incident of its business but for which no license is required" in the absence of wilful, wanton or reckless conduct. *See Manning v. Nobile,* 411 Mass. 382, 387, 582 N.E.2d 942 (1991). Chapter 231, § 85T codifies the legislature's intent "to protect commercial vendors from suits alleging negligence by patrons who injure themselves as a result of intoxication." *Id.* The NCO Club falls squarely within this class of entities.

■ The defendant forcefully argues that the evidence of record, even viewed in the light most favorable to the plaintiff simply will not satisfy this standard. Wilful, wanton or reckless conduct is "intentional conduct, by way either of commission or omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another." *Commonwealth v. Catalina,* 407 Mass. 779, 789, 556 N.E.2d 973 (1990), quoting *Commonwealth v. Welansky,* 316 Mass. 383, 399, 55 N.E.2d 902 (1944). The Massachusetts Supreme Judicial Court has explained that two characteristics of wilful, wanton or reckless conduct [1] distinguish it from ordinarily negligence.

First, the defendant must knowingly or intentionally disregard an unreasonable risk. [citations omitted]. Second, the risk, viewed prospectively, must entail a high degree of probability that substantial harm would result to the plaintiff [quotations and further citations omitted].

*Manning v. Nobile,* 411 Mass. 382, 387, 582 N.E.2d 942 (1991).

■ While plaintiff's case may only clear the rail by a hair's breadth, at this stage the court cannot say the evidence is insufficient. The Club was on notice of serious deficiencies in its security procedures. More than one of the staff knew or should have known that the plaintiff was underage and thus perhaps lacking in judgment with regard to her drinking. Her companion testified that she "acted crazy" while at the Club. Without denying that the contrary evidence is strong, the court must recognize that this testimony is susceptible to opposing inferences and will require assessment by the factfinder. The defendant's Motion for Summary Judgment as to Count II will therefore be denied.

It should also be noted that Count III, which charges negligent supervision of the service of alcohol, should probably be dismissed since it is nothing more than a "restatement of the claim for negligent provision of alcohol. . . ." *Manning v. Nobile,* 411 Mass. at 387, 587 N.E.2d 942. This apparent duplication of claims will be addressed prior to trial.

C. *Defendant's Duty of Care in Serving Alcohol to a Minor.*

■ A simple negligence standard applies with regard to plaintiff's claim for service to a minor.

"It is the rule of this Commonwealth that negligence on the part of a seller or supplier of alcoholic beverages may be shown by a sale or the furnishing" of alcohol to a minor. *Michnik–Zilberman v. Gordon's Liquor, Inc.,* 390 Mass. 6, 10, 453 N.E.2d 430 (1983). The strong public policy against selling liquor to minors requires that vendors of spirits exercise the care of a reasonably prudent person. *Id.* at 11, 453 N.E.2d 430. This high standard of care is applicable to "*all* members of the community, from which it is negligence to deviate." *Id.* The NCO Club falls within the "community" subject to Massachusetts' public safety laws that forbid not just intentional, but also negligent, sales of alcohol to minors. Massachusetts case law

---

1. For the sake of brevity the court will follow the practice of other Massachusetts courts and refer to wilful, wanton or reckless conduct by using the terms interchangeably. *Forbush v. Lynn,* 35 Mass.App.Ct. 696, 699 n. 6, 625 N.E.2d 1370 (1994). "Nothing turns on the absence of one or another of these terms." *Id.*

has clearly established that liability may be based upon sale even to an obviously sober minor. "[T]he sale of alcoholic beverages to a minor is evidence of negligence even if the minor is not intoxicated at the time of the transaction." *Id.* As with the claim for service to an intoxicated person, the evidence of service by the defendant to a minor is sufficient to avoid summary judgment.

### D. *Plaintiff's Motion to Certify.*

 Plaintiff has requested that this court certify as an unresolved issue of state law the question of whether the affirmative defense of comparative negligence is available in a claim brought pursuant to the Massachusetts Wrongful Death Statute. This court may certify determinative issues of Massachusetts law when there is no guiding and controlling precedent. *See, e.g., Snow v. Harnischfeger Corp.,* 12 F.3d 1154, 1161 (1st Cir.1993). The court will deny the motion for certification for three reasons.

First, the answer to the question would not determine the outcome of the motion. As the court has indicated above, even assuming that comparative negligence applies, the motion for summary judgment would have to be denied.

Second, the record of this case is not yet fully developed and could not be presented, in fairness, to the Supreme Judicial Court for review. Discovery has not been completed. The SJC has cautioned that certification must be accompanied by "non-hypothetical, evidentiary facts to allow [the SJC] to adequately determine the answers." *Canal Electric Co. v. Westinghouse Electric Corp.,* 406 Mass. 369, 372, 548 N.E.2d 182 (1990).

Third, sufficient case law, though perhaps not precisely on point, strongly suggests that the affirmative defense of comparative negligence can be asserted in this case. *See Lane v. Meserve,* 20 Mass.App.Ct. 659, 482 N.E.2d 530 (1985), *review denied,* 396 Mass. 1103, 485 N.E.2d 188 (1985). *See also Peck v. Garfield,* 862 F.2d 1, 3 (1st Cir.1988); *Ellis v. Ford Motor Co.,* 628 F.Supp. 849, 858 n. 4 (D.Mass.1986). In *Allen v. Holyoke Hospital,* 398 Mass. 372, 496 N.E.2d 1368 (1986), the SJC seemed to recognize, albeit implicitly, that defendants could offer a comparative

negligence defense in a wrongful death suit. *Id.* at 373, 496 N.E.2d 1368.

This issue may be raised again by the plaintiff as trial approaches, or even (since this will be a non-jury trial) in post-trial filings. By that time, the court may well be enlightened by further decisional law.

### IV. *CONCLUSION*

For the foregoing reasons, the defendant's motion for summary judgment is hereby DENIED as to all counts. The plaintiff's motion to certify is also DENIED.