Cowin, J.
INTRODUCTION
Plaintiff Erik Fournier brings this action to recover for personal injuries sustained on July 9, 1992 while attempting a bicycle stunt on a “half pipe” situated on Colebrook Boulevard in the Town of Whitman. This matter is before the Court on the Town of Whitman’s motion for summary judgment pursuant to Mass.R.Civ.P. 56. For the reasons discussed below, the defendant’s motion for summary judgment is ALLOWED.
BACKGROUND
The undisputed material facts as established by the summary judgment record are as follows. Colebrook Boulevard is a town access road owned by the Town of Whitman.[3] The now-defunct Whitman Skateboard Association (the Association)[4] was an unincorporated association located in Whitman. Defendant Kevin Chichlowski was the president of the Association and defendant Mildred Chichlowski was a member of the Association. On November 8, 1989, the Board of Selectmen of the Town of Whitman (the Selectmen) voted to set aside a portion of Colebrook Boulevard, on a temporaiy basis, for skateboarding. This was done with the stipulation that 1) the Association would oversee the use of the Boulevard and 2) because the Boulevard was abutted by conservation land, the Association would comply with all Conservation Commission rules and regulations to keep the area clean. The Selectmen hoped that the availability of the Boulevard for skateboard activities would keep children from skateboarding on public streets.
Thereafter, on July 30, 1990, the Association filed a site plan petitioning the Whitman Board of Appeals (the Board of Appeals) for authorization to assemble numerous skateboard ramp structures on Colebrook Boulevard. One such structure was a “half-pipe” consisting of a curved metal ramp approximately sixteen feet wide connected to a six-foot platform on one side and a twelve-foot platform on the other side, with each platform bordered on three sides by double wooden safety railings. (See Exhibit A attached.) A Canton advertising agency had purchased the half-pipe for use in a Hills Department Store commercial for back-to-school clothing. The Association had participated *637 in the commercial and, after filming, the advertising agency offered to let the Association keep the half-pipe. On July 31, 1990, the Board of Appeals voted to approve the site plan for Colebrook Boulevard with stipulations that the half-pipe be available for use from 8:00 a.m. to dusk Monday through Saturday and 12:00 noon to dusk on Sunday, that a locking device be placed on the half-pipe during off hours, that no other portable structures be placed on the Boulevard, and that skateboarders would wear safety gear when using the half-pipe.
The half-pipe was thus assembled on the paved surface of Colebrook Boulevard. The Association, which did not carry any liability insurance, oversaw the maintenance of the structure. Kevin Chichlowski examined the half-pipe and removed debris from the surrounding area twice a week and, when necessary, cleaned, painted and mended the half-pipe. The Town of Whitman’s Building Inspector, Carl Gilbert, inspected the half-pipe at the time of its installation on Colebrook Boulevard and on several impromptu occasions thereafter. During each of these inspections, the wooden safety rails on both platforms were intact. Prior to the accident of July 9, 1992, Gilbert never observed any of the safety rails to be missing.
In February 1991, at the suggestion of the Conservation Commission, the Selectmen voted to erect a fence and place boulders around the Colebrook Boulevard skateboarding area. Thereafter, on July 2, 1991, Chichlowski petitioned the Board of Appeals to modify the site plan approval for Colebrook Boulevard to allow general recreational use of the half-pipe, including bicycles. The Board of Appeals denied this modification but voted to allow the Association to apply to the Selectmen for a one-day permit to hold bicycle competitions on the half-pipe. Notices that bikes were not allowed on the half-pipe were posted on the Boulevard, as well as in the Brockton Enterprise. The Town was aware that a Norwell teenager had been injured on November 16, 1990 while operating a bicycle on one of the other skateboard ramps on Colebrook Boulevard.
On July 9, 1992, fifteen-year-old Eric Fournier went to Colebrook Boulevard to use the half-pipe to perform freestyle[5] bicycle stunts. Prior to using the half-pipe, Fournier observed that the safety rails on the back of the 6 foot platform were missing. Attempting to perform a trick called a “fly out,” Fournier exited the half-pipe ramp, intending to spin 180 degrees in the air over the six-foot platform and then reenter the ramp. However, as he left the ramp, his rear tire hit the edge where the ramp met the platform, causing him to fly over the back of the platform and fall six feet to the ground. The safety rails on the back of the platform had apparently been removed by a vandal. Fournier, who was not wearing safety gear, fractured his right arm and suffered multiple soft tissue injuries. Fournier filed the present action on July 1, 1995, alleging negligence against the Town of Whitman in Count I, against the Chichlowskis in Count II, and against the Whitman Skateboard Association in Count III. The complaint further alleges in Counts IV and V that Hingham Mutual Fire Insurance Company committed unfair and deceptive practices in settling Fournier’s insurance claim in violation of G.L.c. 176D and c. 93A.
DISCUSSION
Summary judgment shall be granted where there are no genuine issues as to any material fact and where the moving party is entitled to judgment as a matter of law. Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Mass.R.Civ.P. 56(c). A party moving for summary judgment in a case where the opposing party will have the burden of proof at trial is entitled to summary judgment if he demonstrates, by reference to material described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the party opposing the motion has no reasonable expectation of proving an essential element of that party’s case. Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
Count I of Fournier’s complaint alleges that the Town of Whitman “negligently permitted the half-pipe to become and remain on the public park in an unsafe and dangerous condition so that it was not reasonably safe for those who used the half-pipe.” The complaint further alleges that the Town “failed to exercise reasonable care and due diligence in inspecting and maintaining the half-pipe and in providing for the maintenance and inspection of the half-pipe.” The Town now moves for summary judgment on the ground that it is immune from liability by virtue of the recreational use statute. General Laws Chapter 21, Section 17C provides in relevant part:
An owner of land who permits the public to use such land for recreational purposes without imposing a charge or fee therefor . . . shall not be liable to any member of the public who uses said land for the aforesaid purposes for injuries to person or property sustained by him while on said land in the absence of wilful, wanton or reckless conduct by such owner, nor shall such permission be deemed to confer upon any person so using said land the status of an invitee or licensee to whom any duty would be owed by said owner. G.L.c. 21, §17C (1996).
This statute applies to municipalities and other governmental entities in the same manner and to the same extent as to private landowners. Anderson v. Springfield, 406 Mass. 632, 634 (1990); Catanzarite v. Springfield, 32 Mass.App.Ct. 967, 968 (1992); Forbush v. Lynn, 35 Mass.App.Ct. 696, 697 (1994). It is undisputed that the Town of Whitman owned the land on which the injury occurred and that it permitted the *638 public to use Colebrook Boulevard for recreational purposes without charging a fee.[6] The Town thus contends that it is entitled to summary judgment because its conduct with respect to the half-pipe was not “wilful, wanton or reckless” as a matter of law.
“Wilful, wanton or reckless” conduct means intentional conduct, by way either of commission or omission where there is a duty to act, involving a high degree of likelihood that substantial harm will result to another. Manning v. Nobile, 411 Mass. 382, 387 (1991); Sandler v. Commonwealth, 419 Mass. 334, 336 (1995). Two characteristics of wilful, wanton or reckless conduct distinguish it from mere negligence. First, the defendant must intentionally or knowingly disregard an unreasonable risk. Second, the risk viewed prospectively must entail a high degree of probability that substantial harm — death or serious bodily injury — will result to another. Manning v. Nobile, supra at 387-88; Sandler v. Commonwealth, supra at 336-37.
Thus, for example, in Forbush v. Lynn, a seven-year-old plaintiff was injured while playing on a broken swing at a city playground. 35 Mass.App.Ct. 696, 697 (1994). While sliding down the broken swing chain, the plaintiff became impaled on a large hook on the end of the chain and the chain became embedded in his groin. Id. The undisputed evidence was that a month before the plaintiffs injury, a city employee had inspected the condition of the playground and submitted a report to the city department charged with repairing or replacing damaged playground equipment. Id. Despite the fact that this report listed the broken swing as an unsafe condition, no action was taken to repair or replace the swing or to post any warning. Id. The Appeals Court determined that these facts were sufficient to raise the issue of whether the city acted wilfully, wantonly, or recklessly with respect to the swing so as to impose liability under G.L.c. 21, §17C. Id. at 698.
Conversely, in Sandler v. Commonwealth, the plaintiff was injured while riding through a bike tunnel under a bridge owned by the MDC when his bicycle hit an uncovered, eight-inch wide, twelve-inch long drain which he had not seen because the tunnel was unlit. 419 Mass. at 335. Vandals had removed the drain cover and rendered the lights in the tunnel inoperative. Id. The undisputed evidence revealed that the MDC was aware that the lights in the tunnel were frequently broken, did not work on the day of the accident and, by some accounts, had not been seen illuminated for at least thirteen years. Id. at 337. Further, the MDC knew that the drain covers were not secured in place, did not fit properly and were frequently stolen by vandals, and that at least one drain in the tunnel had been uncovered for ten months prior to the plaintiffs injury. Id. The Court found that the MDC knew that the lack of drain covers and adequate lighting posed a danger to individuals using the tunnel but failed to respond reasonably to that danger by inspecting the tunnel, storing replacement drain covers in the tunnel closet or installing economically feasible vandal-resistant lighting and fastened drains. Id. at 338. Nonetheless, the Court held that, as a matter of law, the MDC’s failure to remedy the known chronic absence of drain covers in the unlit tunnel did not present a level of dangerousness or degree of risk of harm great enough to warrant liability under G.L.c. 21, §17C. Id. at 338-39.
The evidence in the present case is that the Town took the following steps to minimize any risk of harm posed by use of the half-pipe: constructing the half-pipe at a height of six feet rather than the original height of ten feet; requiring users of the equipment to wear safety gear; padlocking the half-pipe during the evening hours; and inspecting the half-pipe periodically for defects. Although Fournier focuses his argument on the alleged “inherent dangerousness” of the half-pipe, the injury here was caused not by use of the equipment in its normal condition, but by use of the equipment after the safety rails had been removed by vandals. With respect to the missing safety rails, the undisputed evidence establishes that the Town made impromptu inspections of the half-pipe for defects, that as of the last inspection the safety rails were intact, and that the Town had no knowledge of vandalism either to the equipment on Colebrook Boulevard in general or to the half-pipe in particular. Compare Forbush v. Lynn, supra at 697 (holding that an issue of wanton and reckless conduct was raised where the city knew of a defective swing a month before the plaintiffs injury but failed to take any action).
In the Sandler Case, the court found that the MDC was not wanton or reckless as a matter of law where it knew of the danger to bicyclists from the unlit tunnel and uncovered drains, knew that the lights did not work and the drains were often uncovered, but failed to inspect the tunnel or take any remedial action. In the present case, the Town of Whitman inspected the half-pipe for defects on several occasions, never found the safety rails missing, and had no notice of any risk posed by vandalism to the equipment. As a matter of law, viewed prospectively, the Town’s conduct did not entail a high degree of probability that substantial harm would result to those using the half-pipe. Accordingly, this case does not present a level of dangerousness or degree of risk of serious injury warranting liability for wantonness or recklessness under G.L.c. 21, §17C.
Nonetheless, Fournier argues that there is a genuine issue of material fact as to whether the Town was wilful, wanton or reckless with respect to the half-pipe because “the risk that death or serious bodily injury would result from allowing children to use the structure is very high,” the Town placed the half-pipe on its land “with the specific purpose to attract young children to play on it," and in November 1990, the Town *639 “became aware that a teenager from Norwell was injured, while using a bicycle on a skateboard ramp at Colebrook Boulevard.” Foremost, Fournier’s contention that the Town was reckless because it placed the half-pipe on its land with the specific purpose of enticing children to use it is disingenuous given that the basis for any Chapter 21, Section 17C case is a property owner holding out his land and facilities to the public for recreational use. See Molinaro v. Northbridge, 419 Mass. 278, 279 (1995) (noting that the recreational use statute does not contain a heightened standard of liability for injuries to children from playground structures).
With respect to the prior incident involving the Norwell teenager, it should be noted that there is no evidence before this Court as to the severity of that teenager’s injury, or the similarity between the “ramp” involved in that case and the half-pipe at issue here. Moreover, there is no indication that the prior incident involved alteration of the ramp by vandals or that the Town had reason to be aware of any danger posed by vandalism to the equipment. To the extent that the November 1990 incident alerted the Town to the possible misuse of the skateboard half-pipe by bicyclists and potential injury therefrom, the summary judgment record indicates that the Town took specific steps to guard against this danger by refusing to open the half-pipe to general recreational use posting the prohibition on bicycle use and requiring a special permit from the Selectmen to use the half-pipe for bicycle competitions.
Although Fournier is correct that summary judgment is generally not granted in actions alleging wanton or reckless conduct, that rule is not absolute. Manning v. Nobile, supra at 388. Where a landowner such as the Town establishes that its conduct as a matter of law does not rise to the level of wantonness or recklessness, it is entitled to summary judgment under G.L.c. 21, §17C. Sandler v. Commonwealth, supra at 338-40; Dore v. Immaculate Conception Educational Ass., Civil No. 93153, 4 Mass. L. Rptr. 368 (Essex Super. Ct. Aug. 2, 1995) (Whitehead, J.) (granting summary judgment for defendant under the recreational use statute where the plaintiff fell into a hole under a basketball net, the landowner should have been aware of the existence of the hole, and injury by falling into the hole while playing basketball was highly likely); Robitaille v. Attleboro, Civil No. 9500515 (Bristol Super. Ct. Feb. 8, 1996), 5 Mass. L. Rptr. No. 6, 130 (May 13, 1996) (Tierney, J.) (holding that where a child’s finger became caught and severed in the hinge of an extremely heavy steel door in a dark tropical rain forest exhibit at a zoo, the door had no handle, knob or marking to indicate on which side it opened, and the exit was not lit, but the zoo had received no prior complaints about the door, there'was no wanton or reckless conduct as a matter of law). This Court concludes that Fournier has no reasonable expectation of proving at trial that the Town was wilful, wanton or reckless with respect to the danger posed by the use of the half-pipe. Accordingly, the Town is immune from liability under the recreational use statute, G.L.c. 21, §17C, and is entitled to judgment as a matter of law on Count I of the complaint.
ORDER
For the foregoing reasons, it is hereby ORDERED that defendant Town of Whitman’s motion for summary judgment is ALLOWED.

 Colebrook Boulevard is closed to vehicular traffic.

 It is not clear from the record when the Association ceased to exist. However, it is undisputed that at the time of Fournier’s accident on July 9, 1992, the Association was defunct.

 A freestyle bicycle is one made and marketed not for traveling or racing but for performing stunts such as “wheelies,” “rock walks,” “endos,” “bar spins," “table tops” and “fly-outs.”

 Although the parties disagree as to whether the Town or the Association owned the half-pipe, this dispute is not material for purposes of the present motion, since c. 21, § 17C refers to the use of “land” for recreational purposes and injuries occurring on that land, as opposed to use of “property. ” Regardless of who owned the half-pipe, it is undisputed that the Town owns Colebrook Boulevard, the land on which Fournier’s injury occurred.