Lopez, J.
This case comes before the court on a motion for summary judgment filed by the plaintiffs, and a cross motion for partial summary judgment filed by the defendants. The plaintiffs sued the defendants for breach of contract after the defendants failed to return their $69,500 down payment for a parcel of land as described and depicted by the Purchase and Sale Agreement. The defendants filed a counterclaim seeking damages in addition to those provided by the Agreement’s liquidated damages clause. For the following reasons, the court ALLOWS plaintiffs’ motion and DENIES the defendants’ cross motion.
FACTUAL BACKGROUND
On March 22, 1999, Plaintiffs Paul W. Kelley and Kathleen Kelley (“the Kelleys”), entered into a Standard Form Purchase and Sale Agreement (“Agreement”) with the Defendants, Donald C. Dolben and Martha P. Dolben (“the Dolbens”). Paragraph two of the Agreement describes the premises as:
A certain parcel of land containing 5+ acres, more or less, known and numbered as Lot 2 Lowell Road, Concord, MA 01742, being a portion of property described at the Middlesex Probate No. 97P 4964 EP and deed recorded with Middlesex South Registry of Deed, BK 6406. Pg 590. See “Preliminary Site Development Plain” by Hartwright[3] (“the Hartwright Plan").
This motion implicates additional sections of the Agreement. Paragraph twenty-seven states that the instrument is to “be construed as a Massachusetts contract . . . [that] sets forth the entire contract between the parties . . . And may be canceled, modified or amended only by written instrument executed by both the SELLER AND BUYER.” Additionally, paragraph 30 incorporates by reference Addendum A (“the Addendum”), also signed by the parties on March 22, 1999. Paragraph 1 of the Addendum states that:
The land comprising Lot 2 to be conveyed hereunder shall be as located on the attached preliminary plan. Notwithstanding the foregoing, in the event local agencies or authorities shall require any change in the proposed boundaries, Seller, after consultation with Buyer, may change such boundaries, and, in any event, if Seller deems it in the best interest, aesthetic or otherwise, of the owners of Lots 1, 2 and 3 as shown on the preliminary plan, upon the reasonable prior approval of such owner, or contract purchasers, of which Buyer is one, which approval shall not be unreasonably withheld or delayed, Seller may modify said boundaries.
The Kelleys paid two deposits totaling $69,500 towards their purchase of Lot 2. On or about May 17, 1999, the Kelleys were shown a development plan prepared by Stamski and McNary, Inc. (“the Stamski Plan”), which changed the boundary lines of Lot 2 in the Hartwright Plan.
On May 27, 1999, the parties signed a second amendment to the Agreement which, among other things, provides that “Buyer agrees that Seller fully performed its development activities contemplated by the Agreement and, excepting Seller’s delivery of the deed and title to the premises in accordance with the Agreement, Buyer’s deposit is nonrefundable.”
On June 22, 1999, the Kelleys’ attorney received via facsimile another proposed amendment to the Agreement from the Dolbens’ attorney. The proposed amendment states that
Buyer agrees thast the premises to be conveyed hereunder shown as Lot 2 on plan of land ... by Stamski McNary, Inc., is acceptable in all respects to buyer and that Seller has fully performed its development activities contemplated by the Agreement . . .
The Kelleys did not sign the proposed agreement. When the Dolbens did not convey Lot 2 as described by the Hartwright plan, the Kelleys filed this suit. In response, the Dolbens filed a counterclaim for damages.
DISCUSSION
Summary judgment is appropriate when there are no material facts in dispute and when the moving party is entitled to judgment as a matter of law. Mass.R.Civ.P. 56. The moving party bears the burden of affirmatively demonstrating the absence of a triable factual issue, and of showing that it is entitled to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once the moving party demonstrates the absence of a trial issue, the party opposing the motion must respond with evidence of specific facts establishing the existence of a material factual dispute. Id. at 17. Summary judgment is a “device to make possible the prompt disposition of controversies on their merits without a trial, if in essence there is no real dispute as to the salient facts *510 or if only a question of law is involved.” Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976).
The Kelleys argue that the Dolbens refused to deliver Lot 2 as described by the Hartwright Plan, and that any alleged oral agreement to modify the property’s boundaries according to the Stamski plan is unenforceable since it violates the Statute of Frauds. See G.L.c. 259, § 1. According to the Dolbens, however, when they showed the Kelleys the Stamski plan, the Kelleys orally consented to the change. In their view, the boundary modification concerns the performance of the Agreement, not the substantive provisions of the Agreement, and thus, is not barred by the Statute of Frauds.[4] When considered on the basis of this summary judgment motion, the Kelleys’ breach of contract claim therefore reduces to the question of whether an oral modification of Lot 2’s boundaries violates the Statute of Frauds.
Any promise involving real property is enforceable only if that promise meets the requirements of the Statute of Frauds. Schwanbeck v. Federal-Mogul Corp., 412 Mass. 703, 709 (1992). In pertinent part, that statute makes clear that "No action shall be brought. . . [u]pon a contract for the sale of lands or of any interest concerning them; unless the promise, contract or agreement upon which such action is brought or some memorandum or note thereof, is in writing and signed by the party to be charged therewith.” G.L.c. 259, §1. Although the Statute of Frauds generally bars a plaintiff from suing upon an oral modification of a written contract, it does not bar a defendant from showing that he has performed the contract according to an oral agreement for substitute performance. See Lampsona v. Capriotti, 296 Mass. 34, 38-39 (1936); Rosenfeld v. Standard Bottling & Extracts Co., 232 Mass. 239, 245 (1919); Cummings v. Arnold, 3 Met. 486, 491 (1842).
The Supreme Judicial Court has limited what may constitute an oral agreement for a substitute performance. In Cummings, the plaintiff sued for breach of contract after the defendants failed to deliver a quantity of goods at a price stipulated in the written contract. The defendants argued that the plaintiff had not complied with oral agreements calling for the plaintiff to pay cash for the goods. The Court held that the Statute of Frauds did not bar the defense because the oral agreement did not vary the terms of the written contract as to the defendant's performance, and only altered the time of payment by the plaintiffs. See Cummings, 3 Met. at 491; See also Whittier v. Dana, 10 Allen 326 (1865) (under Cummings, plaintiff could not rely on an oral modification of a written contract, although defendants could raise it as a defense, had they performed the substituted performance). In Stearns v. Hall, 9 Cush. 31, 33-34 (1851), the Court extended this rule to allow a plaintiff suing on a written contract for the sale of land to prove satisfaction of a substituted performance concerning the time of payment. Although the defendant argued that Cummings was inapplicable since the party “relying on the parol agreements seeks to charge the defendant upon it,” the Court held that the Statute of Frauds did not bar the suit. Id. at 36. This rule is now well settled; only the manner of, or time for, performance of a written contract within the Statute of Frauds maybe modified orally. See Simpson v. Vasiliou, 29 Mass.App.Ct. 699, 702 (1991); see also Rex Lumber Co. v. Action Block Co., 29 Mass.App.Ct. 510, 516 (1990) (allowing an oral agreement to extend the closing date stated in a purchase and sale agreement); Johnston v. Holiday Inns, Inc., 565 F.2d 790 (1st Cir. 1977) (under Massachusetts law, term allowing for the reduction of a guarantee period, although significant, did not as a matter of law constitute a new contract rather than substituted performance since “the original contract still determined the relationship and the respective rights of the parties”).
To determine whether an oral agreement falls within the holding of Cummings, the court must compare it against the written contract. If the modification is “so material and so extensive that the original contract has disappeared,” and differs so much from the original contract that it constitutes “not a mere, substituted performance, but a new contract that must be proved by writing,” the defense is not available. Johnston, 565 F.2d at 795; see also Rosenfeld, 232 Mass. at 245 (Cummings does not apply to oral agreements concerning salary arrangements and formulae because modification of such “essential terms” must be memorialized in writing).
The Agreement in this case makes clear that modifications and amendments can “only be made by written instrument executed by both the SELLER and BUYER.” The Dolbens, however, read the language in the Addendum, which states that if “Seller deems it in the best interest, aesthetic or otherwise, . . . upon the reasonable prior approval of [the] . . . Buyer . . . [whose] approval shall not be unreasonably withheld or delayed, Seller may modify said boundaries,” as granting them discretion to unilaterally substitute the Stamski plan for the Hartwright plan. Under their interpretation, all changes to the Agreement except for adjustments to the boundaries of the lots are required to be in writing and formally signed the parties.[5]
The meaning of a contract, such as what promises it makes or what duties and obligations it imposes, is a question of law for the court. Atwood v. Boston, 310 Mass. 70, 74 (1941); see also Robert M. Rodman, Methods of Practice §91, at 73 (1991) (“The construction of a purchase and sale agreement, in writing, is a matter of law”). “A contract is to be construed to give reasonable effect to each of its provisions. Every phrase and clause must be presumed to have been designedly employed, and must be given meaning and effect, whenever practical, when construed with all the other phraseology contained in the instrument, which must be considered as a workable and harmonious *511 means for carrying out and effectuation the intent of the parties.” Sarvis v. Cooper, 40 Mass.App.Ct. 471, 475-76 (1996); see also JRY Corp., v. LeRoux, 18 Mass.App.Ct. 153, 159 (1984) (“It is the usual rule that contracts must be interpreted as a whole”). Moreover, “if the parties execute two or more documents, with a manifested intent that the documents together express their entire agreement, a court reads the documents together, rather than as if each stood alone.” Donoghue v. IBC USA Inc., 70 F.3d 206, 212 (1st Cir. 1995). Thus, when a single transaction is involved, the language in the provision of one writing may control a provision in another writing. Katz v. Belko, 16 Mass.App.Ct. 178, 181 (1983); see also Phoenix Spring Beverage Co. v. Harvard Brewing Co., 312 Mass. 501, 505 (1942) (“It is a general rule that when several writings evidence a single contract between the parties, they will be read together in order to arrive at an interpretation of the contract”).
The Court agrees with the Kelleys’ reading of the Agreement and its amendments. The Dolbens’ interpretation ignores the agreement’s unambiguous modification procedure and circumvents the Kelleys’ express contractual right to approve any modifications before they are implemented. Moreover, the Dolbens’ reading trivializes the significance of initially even providing a definition of Lot 2’s boundaries in the Agreement, an essential term in any Purchase and Sale agreement. See Robert M. Rodman, Methods of Practice §91, at 73 (1991). Although the Kelleys may have been aware that the Hartwright plan was preliminary and potentially subject to alteration pending the results of the surveyor-ship, the contract nonetheless required the Dolbens to execute a signed agreement before changing the boundaries. The Court’s interpretation thus reads the Addendum in harmony with the original agreement.
Accordingly, the substantive terms of a contract involving a party’s performance obligations are distinguishable from the technical terms of a contract that concern the time, place and manner for performance. As such, the Court has no authority to enforce the oral agreement unless it is memorialized in a writing as required by the Statute of Frauds.
The Dolbens also contend that the second amendment executed in May memorializes the Kelleys’ alleged oral consent to modify Lot 2’s boundaries. Whether a writing complies with the Statute of Frauds is a question of law for the court. Simon v. Simon, 35 Mass.App.Ct. 701, 709 (1994). To satisfy the Statute, a writing must incorporate directly and accurately the promise that the party seeks to enforce. Harrington v. Fall River Housing Authority, 27 Mass.App.Ct. 301, 306 (1989); Simon, 35 Mass. App.Ct. at 709. The language of the second amendment, which states generally that the “Buyer agrees that Seller fully performed its development activities contemplated by the Agreement,” does not reflect any specific discussion about boundary modification. If anything, the amendment reaffirms that at closing, Lot 2 will maintain the boundaries as depicted in the Hartwright plan. Thus, the amendment fails to explicitly reference the provisions of the oral agreement the Dolbens wish to enforce.
Since the oral agreement does not comply with the Statute of Frauds, the Court has no authority to enforce it. Therefore, the Kelleys’ motion for summary judgment is ALLOWED.
THE DOLBENS’ CROSS MOTION FOR PARTIAL SUMMARY JUDGMENT
Under the liquidated damages clause of the Agreement, should the buyer breach the contract, “all deposits made [under the Agreement] by the buyer shall be retained by the seller.” The Agreement also provides, however, that if the seller fails “to . . . deliver possession, then any payments made under this agreement shall be forthwith refunded.” Thus, since the Court finds that the Kelleys have not breached the Agreement and the Dolbens have not delivered Lot A as described by the Agreement, the Dolbens’ cross motion for partial summary judgment is DENIED.
ORDER
For the foregoing reasons, the plaintiffs’ motion for summary judgment is ALLOWED. The defendants’ cross motion for partial summary judgment is DENIED and they are ORDERED to refund the plaintiffs’ $69,500 down payment held in escrow.

The parties disagree as to the characterization of this description. Plaintiffs argue that the Hartwright Plan is a “Preliminary Site Development Plan" as worded in the contract; Defendants contend that the plan was a “Preliminary Site Development Plan for Planning Purposes Only,” as labeled on the sketch of that plan.

In the alternative, the Dolbens argue that whether or not the Kelleys unreasonably withheld their consent to approve the Stamski plan under the Addendum is an issue of fact for a jury to decide. Although issues of reasonableness are ordinarily left for a jury, see Mutual Bank for Saving v. Silverman, 13 Mass.App.Ct. 1059, 1061 (1982), their argument misses the point. According to the language of the contract, if the Dolbens felt that the Kelleys were unreasonably withholding consent, the proper action was to continue negotiations and perhaps file a breach of contract suit, rather than tendering a parcel of land with boundaries different than those described in the Agreement and unlawfully withholding a deposit from the Kelleys in the meantime.

The Dolbens argue that the Stamski plan is a “substitution,” not a “modification” of the Hartwright plan, and is thus outside the scope of the Agreement’s modification provision. Their argument is one of semantics; the contract’s description of Lot A refers to the “Preliminary Site Development Plan by Hartwright," the Addendum reaffirms that the boundaries of Lot 2 are depicted by the Hartwright Plan, and the Hartwright Plan is attached to the agreement. Nonetheless, the Stamski Plan, whether it acted as a “substitute” to the Hartwright plan or modified it, did substantially change the boundaries of Lot 2, as described and depicted by the Agreement. Nor is the consistency of these references clear on the face of the papers. Hence, the court cannot accept the Dolbens’ reading.