KEVIN BARROWS *vs.* WAREHAM FIRE DISTRICT & others.[1]

No. 11-P-288.

Plymouth. November 4, 2011. - October 12, 2012.

Present: TRAINOR, MILKEY, & AGNES, JJ.

*Massachusetts Tort Claims Act. Libel and Slander. Municipal Corporations,*
Liability for tort, Governmental immunity. *Intentional Conduct. Govern-*
*mental Immunity.*

In a civil action brought against, inter alia, a town fire district and a town
board of water commissioners, alleging defamation based on reckless
conduct in the plaintiff's termination from public employment, the judge
properly granted summary judgment in favor of those defendants, where
defamation is explicitly enumerated in G. L. c. 258, § 10(*c*), as one of the
torts exempted from the provisions of the Massachusetts Tort Claims Act,
and the level of fault pleaded (i.e., intentional, reckless, or simply negligent
conduct) makes no difference [625-630]; further, the judge properly granted
summary judgment in favor of an individual defendant (the superintendent
of the water department of the fire district), where that defendant's conduct
was conditionally privileged, in that his conduct of an investigation prior
to confronting the plaintiff did not amount to a reckless disregard of the
truth and the circumstances of the plaintiff's termination and administra-
tive appeal did not amount to unnecessary, unreasonable, or excessive
publication [630-632].

CIVIL ACTION commenced in the Superior Court Department on
April 7, 2008.

The case was heard by *Richard J. Chin*, J., on a motion for
summary judgment.

*Frank J. McGee* for the plaintiff.

*Michael J. McGlone* for the defendants.

TRAINOR, J. The plaintiff, Kevin Barrows, appeals from a sum-
mary judgment entered by a judge of the Superior Court on his

---

[1]Members of the board of water commissioners of the Wareham fire district
and Michael Martin, individually and as superintendent of the water depart-
ment of the Wareham fire district.

claims of defamation and slander against the municipal defendants, the Wareham fire district and the board of water commissioners of Wareham (collectively, town) (counts I and II of the complaint); and Michael Martin, individually and as the superintendent of the water department of the Wareham fire district (count III of the complaint). Barrows argues on appeal that it was error for the judge to rule (1) that the town was exempt from liability pursuant to G. L. c. 258, § 10(c); and (2) that Martin was exempt from liability based on a conditional privilege to make the allegedly defamatory statements.

Ultimately, the appeal poses two questions: (1) whether a claim of defamation based on allegations of reckless conduct by a municipal employee is an intentional tort for the purposes of a G. L. c. 258, § 10(c), exemption from the liability imposed by the Massachusetts Tort Claims Act (Act), and (2) whether that same alleged misconduct is exempt from individual liability because of the privilege granted to a public official in the exercise of his official duties. We conclude that (1) under the Act, a municipality is exempt from liability for a reckless defamation claim against a municipal employee based on the specific inclusion of both forms of defamation, slander and libel, in the list of torts enumerated in G. L. c. 258, § 10(c); and (2) Martin did not act with a level of misconduct necessary to forfeit his conditional privilege as a public official. For these reasons and others discussed below we affirm the summary judgment.

*Facts.* The summary judgment record provides us with the following undisputed facts. Barrows was employed by the water department of the Wareham fire district (water department) as a foreman. On July 18, 2005, Martin, the superintendent of the water department, met with both Barrows and Andrew Cunningham, Barrows's direct supervisor, and delivered to Barrows a written list of thirteen separate allegations of gross misconduct. Barrows was ordered to appear before Martin the next morning, July 19, 2005. At the July 19 meeting, Barrows was accompanied by Nancy Caldeira and Robert Silvia, his union representatives. He refused to answer any of the allegations at the meeting, as he wanted to seek legal advice before proceeding. Later on July 19, Martin delivered to Barrows a letter terminating his employment based on some of the allegations.

The allegations of misconduct were based on actions taken by Barrows in 2004. The allegations claimed, and Barrows has conceded, that he took dirt and sand dug from graves in the town cemetery and stockpiled it behind the water department building in an area subject to regulation under the Wetlands Protection Act. Barrows also allowed two local construction companies to store significant amounts of their own construction by-products in the same location.

As evidence that he was being targeted by Martin, Barrows submitted an affidavit of Cynthia Parola, a former Wareham selectman, in which she stated that Martin told her in the summer of 2002, "I'm going to make it my mission to get rid of Kevin Barrows."

Barrows appealed his termination to the prudential committee, a body authorized to review termination appeals. After a public hearing that Barrows had requested, the prudential committee determined that he had not committed any violations and that his firing was not justified. Barrows was immediately reinstated to his position with full back pay for any lost wages and benefits. The Wareham conservation commission later found that some of the material that Barrows had placed or had authorized to be placed behind the water department building had been deposited into an area subject to regulation under the Wetlands Protection Act. It cost the town approximately $150,000 to remediate the problem.

*Discussion.* 1. *Summary judgment.* Summary judgment shall be granted where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law. *Cassesso* v. *Commissioner of Correction*, 390 Mass. 419, 422 (1983). See *Community Natl. Bank* v. *Dawes*, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989).

The town argues that the grant of summary judgment on counts I and II was proper as a matter of law pursuant to G. L. c. 258, § 10(c). The town and Martin further argue that summary judgment was also appropriate on count III pursuant to the privilege applicable to statements made by public officials in the performance of their official duties.

2. *Claims against the town.* "[T]he primary purpose of the Act was to replace the common-law doctrine of governmental immunity, and its myriad judicially created exceptions, with a comprehensive statutory scheme governing the tort liability of public employers." *Morrissey* v. *New England Deaconess Assn. — Abundant Life Communities, Inc.*, 458 Mass. 580, 590 (2010). The Act "created a cause of action against public employers for the negligent or wrongful acts or omissions of their employees acting within the scope of their employment." *Nelson* v. *Salem State College*, 446 Mass. 525, 537 (2006). See G. L. c. 258, § 2. The Act expressly exempts intentional torts from its provisions, and therefore a public employer cannot be sued for the intentionally tortious conduct of its employee. See G. L. c. 258, § 10(*c*).[2] While § 10(*c*) lists a number of intentional torts, its use of the word "including" indicates that the enumerated list is representative, not all-inclusive, and that any intentional tort is covered by § 10(*c*). See *Connerty* v. *Metropolitan Dist. Commn.*, 398 Mass. 140, 149 (1986); *Molinaro* v. *Northbridge*, 419 Mass. 278, 279 (1995).

Barrows argues that since his complaint alleges reckless misconduct in the defamation claim, the town is not exempt from suit under the provisions of § 10(*c*). Barrows's argument is based largely on *Forbush* v. *Lynn*, 35 Mass. App. Ct. 696, 699 (1994), in which we determined that the alleged wilful, wanton, and reckless conduct of municipal employees "should not be equated with the intentional torts which § 10(*c*) exempts from the coverage of the Massachusetts Tort Claims Act." Contrast *Commonwealth* v. *Welansky*, 316 Mass. 383, 399, 401 (1944) ("The essence of wanton or reckless conduct is intentional conduct, by way either of commission or of omission where there is a duty to act, which conduct involves a high degree of likelihood that substantial harm will result to another. . . . Wanton or reckless conduct is the legal equivalent of intentional conduct"). The municipality in *Forbush* was not immune from

---

[2] General Laws c. 258, § 10(*c*), inserted by St. 1978, c. 512, § 15, excludes from the Act "any claim arising out of an intentional tort, including assault, battery, false imprisonment, false arrest, intentional mental distress, malicious prosecution, malicious abuse of process, libel, slander, misrepresentation, deceit, invasion of privacy, interference with advantageous relations or interference with contractual relations."

tort liability under the Act when a child was seriously injured while playing on a public playground as a result of the municipality's wilful, wanton, and reckless conduct. *Forbush* v. *Lynn, supra* at 699.[3]

Relying on *Forbush*, Barrows argues that the town defamed him wantonly and recklessly, and that therefore his complaint should not have been dismissed pursuant to G. L. c. 258, § 10(*c*).[4] He argues that the Legislature did not intend wanton and reckless defamation to be exempted under § 10(*c*) as an intentional tort.

We do not agree with Barrows's argument and are not persuaded by his attempt to apply the *Forbush* analysis to the tort of defamation. First, the tort at issue in *Forbush* was a claim for personal injury based on reckless or wanton conduct, a tort that is not specifically exempted from liability under the Act by § 10(*c*).[5]

Additionally, as we will discuss in more detail, the gravamen of the tort of defamation does not lie in the nature or degree of the misconduct but in its outcome, i.e., the injury to the reputation of the plaintiff. Barrows misconstrues (1) the nature of the

---

[3]In *Forbush*, we emphasized "the difference between the intention to commit an act which involves a high degree of likelihood that substantial harm may result to another (reckless misconduct) and the intention to cause that harm (intentional misconduct)." 35 Mass. App. Ct. at 700, citing Restatement (Second) of Torts § 500 comment f (1964). We relied on this distinction when we determined that the reckless conduct alleged in that case was not exempt from suit under § 10(*c*). *Id.* at 701-704. There are, however, very significant exceptions to the rule announced in comment f of the Restatement (Second) of Torts § 500 and highlighted in *Forbush, supra.* For example, we have recognized that reckless misconduct is sufficient to prove the tort of intentional emotional distress since the tort was first recognized in *George* v. *Jordan Marsh Co.*, 359 Mass. 244, 255 (1971). In that context, "reckless" or "wanton" conduct is the essence of the intentional conduct required for the commission of the tort of intentional emotional distress. See *Tilton* v. *Franklin*, 24 Mass. App. Ct. 110, 112 (1987). The Legislature specifically listed intentional mental distress (which we view as the same as intentional emotional distress, see *ibid.*), as an intentional tort in § 10(*c*), despite the fact that it can be proved by reckless misconduct.

[4]Specifically, Barrows's amended complaint alleged that "the [town's] allegations . . . were false and reckless in disregard of the truth, wilful, and wanton, and taken without investigation of the allegations."

[5]In contrast, the species of personal injury that results from an intentional act is properly considered to be a battery, a tort that *is* specifically enumerated in § 10(*c*).

tort of defamation and (2) the significance of its specific inclusion as an intentional tort in § 10(c). "Defamation is the publication of material by one without a privilege to do so which ridicules or treats the plaintiff with contempt." *Draghetti* v. *Chmielewski*, 416 Mass. 808, 812 (1994), quoting from *Correllas* v. *Viveiros*, 410 Mass. 314, 319 (1991). Defamation is essentially spoken or written words or expressions that injure reputation.[6] See *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 853 (1975). While jurisdictions differ as to the extent to which a statement must be capable of injuring the plaintiff's reputation for it to be defamatory, in Massachusetts the false statement must be one that "discredits the plaintiff 'in the minds of any considerable and respectable segment in the community.' " *Draghetti* v. *Chmielewski, supra* at 811, quoting from *Tropeano* v. *Atlantic Monthly Co.*, 379 Mass. 745, 751 (1980).

Although defamation is explicitly enumerated in § 10(c), it is unique among the listed intentional torts in that it does not require any intentional misconduct.[7,8] Assuming the other elements of defamation are present, the publication of a false state-

---

[6]In most cases the statement must be false. See *Bander* v. *Metropolitan Life Ins. Co.*, 313 Mass. 337, 342 (1943). Massachusetts, by statute, allows a plaintiff to recover for a truthful defamatory statement if it was published in writing (or its equivalent) and with actual malice. See G. L. c. 231, § 92.

[7]An exception to this rule exists when the plaintiff in a defamation suit is a public figure; in such a case the plaintiff must prove the defendant acted with malice. See *New York Times Co.* v. *Sullivan*, 376 U.S. 254, 279-280 (1964); *Howell* v. *Enterprise Publishing Co., LLC*, 455 Mass. 641, 664 (2010). In this case, *Sullivan* does not apply because Barrows only alleges defamation as a private party.

[8]Torts with clear specific intent requirements include assault, *Commonwealth* v. *Musgrave*, 38 Mass. App. Ct. 519, 523-524 (1995), *S.C.*, 421 Mass. 610 (1996); battery, *Waters* v. *Blackshear*, 412 Mass. 589, 590 (1992); false imprisonment, *Ortiz* v. *Hampden County*, 16 Mass. App. Ct. 138, 139-140 (1983); false arrest, *Gutierrez* v. *Massachusetts Bay Transp. Authy.*, 437 Mass. 396, 405-406 (2002); malicious prosecution, *Beecy* v. *Pucciarelli*, 387 Mass. 589, 594-595 (1982); abuse of process, *Datacomm Interface, Inc.* v. *Computerworld, Inc.*, 396 Mass. 760, 775-776 (1986); invasion of privacy, *Martinez* v. *New England Med. Center Hosps., Inc.*, 307 F. Supp. 2d 257, 267 (D. Mass. 2004); interference with advantageous relations, *Blackstone* v. *Cashman*, 448 Mass. 255, 260 (2007); and interference with contractual relations, *Swanset Dev. Corp.* v. *Taunton*, 423 Mass. 390, 397 (1996). Intentional mental distress requires intentional *or* reckless misconduct, however, and the Supreme Judicial Court has held that a claim for intentional mental distress based on reckless misconduct is covered by the exemption in § 10(c). See *Tilton* v.

ment about a private party is equally tortious whether it is made intentionally, recklessly, or negligently. See, e.g., *Ezekiel* v. *Jones Motor Co.*, 374 Mass. 382, 390 (1978) (defamation verdict reinstated where jury could have determined that defendant during public hearing "knowingly l[ied] or knowingly accus[ed] the plaintiff of theft"); *New England Tractor-Trailer Training of Conn., Inc.* v. *Globe Newspaper Co.*, 395 Mass. 471, 476-477 (1985), quoting from *Stone* v. *Essex County Newspapers, Inc.*, *supra* at 855 ("private persons . . . may recover compensation on proof of negligent publication of a defamatory falsehood").

Courts determined early on that the nature of the wrong in a defamation of a private party is unrelated to the defendant's intentions or his degree of malice: "[I]t is said that neither the intention with which a tortfeasor acted, nor the state of his feelings toward the person injured . . . , can make him less responsible for the injury actually caused by his wrongful act. Carelessly to utter defamatory statements entails the same responsibility for the injurious consequences as negligently to cast about firebrands, or shoot off a gun: since the defendant has in fact done the wrongful act he must be taken to have intended the consequences which naturally resulted." Note, Libel Without Intent, 23 Harv. L. Rev. 218-219 (1910), citing *Curtis* v. *Mussey*, 6 Gray 261 (1856); *Hill* v. *Winsor*, 118 Mass. 251 (1875); *Hanson* v. *Globe Newspaper Co.*, 159 Mass. 293 (1893); *Ellis* v. *Brockton Publishing Co.*, 198 Mass. 538 (1908).

For private persons, intent is not essential to the tort of defamation. Intent is presumed, or, at a minimum, responsibility and liability is imputed as if intent was manifest, even when publication is negligently or carelessly effectuated. See *In re Pereira*, 44 B.R. 248, 252 (Bankr. D. Mass. 1984). The Legislature appears to have acknowledged and perpetuated this unique characteristic of the tort of defamation, by specifically including it in § 10(*c*).

---

*Franklin, supra.* Fraudulent misrepresentation and deceit appear to be similar to intentional mental distress in that they can be committed by either intentional or reckless misconduct. See *Graphic Arts Finishers, Inc.* v. *Boston Redev. Authy.*, 357 Mass. 40, 44 (1970); *Hogan* v. *Riemer*, 35 Mass. App. Ct. 360, 365 (1993). Negligent misrepresentation would not be exempt, as it is a separate and distinct nonintentional tort that is not enumerated in § 10(*c*), much the same way battery is enumerated while negligent or reckless personal injury are not.

The discussion in Restatement (Second) of Torts § 500 comment f (1964) of the distinction between intentional misconduct and reckless misconduct, applicable to the tort of personal injury and relied on in the *Forbush* decision, is specifically not applicable to the tort of defamation. We recognize no such distinction, because, as stated above, the gravamen of the tort is not determined by the nature of the misconduct but by its outcome, i.e., the injury to the reputation of the plaintiff.

Since our case law has determined that any degree of misconduct — intentional, reckless, or simply negligent — is sufficient to prove a claim for defamation of a private party, it follows that it should make no difference which level of fault is pleaded for the purposes of a § 10(*c*) exemption. A statement about a private party that is negligently published, with intentional or reckless disregard for its truth, can be just as defamatory as a statement that is intentionally published, with negligent disregard for its truth. See *New England Tractor-Trailer Training of Conn., Inc.*, supra; *Ravnikar* v. *Bogojavlensky*, 438 Mass. 627, 630 (2003). Ultimately, and appropriately, the Legislature has determined that both species of defamation, libel and slander, are intentional torts for the purposes of § 10(*c*).[9] Summary judgment was properly granted in favor of the town on counts I & II.

3. *Claim against Martin.* Martin argues that summary judgment was appropriate as to count III because an absolute privilege or, in the alternative, a conditional or qualified privilege applies to statements made by public officials in the performance of their official duties.[10] "Statements made by public officials while performing their official duties are conditionally

---

[9]The Act is modeled closely on the Federal Tort Claims Act (FTCA), and a comparison of the two statutes supports our conclusion that the Act intended to exempt all forms of defamation. See 28 U.S.C. § 2680 (2006); *Vining* v. *Commonwealth*, 63 Mass. App. Ct. 690, 693 (2005). In the comparable provision to § 10(*c*) in the FTCA, Congress exempts the Federal government from liability for a similar list of tort claims, including slander and libel, but does not refer to the listed torts collectively as "intentional tort[s]." 28 U.S.C. § 2680(h). The FTCA, therefore, plainly exempts *all* varieties of slander and libel from suit, as well as all varieties of the other listed torts.

[10]The Supreme Judicial Court has not directly addressed whether public officials in Massachusetts are entitled to an absolute privilege in the performance of their official duties. Thus far the court has determined it unnecessary to

privileged. . . . The threat of defamation suits may deter public officials from complying with their official duties when those duties include the need to make statements on important public issues." *Mulgrew* v. *Taunton*, 410 Mass. 631, 635 (1991). We recognize that, on certain occasions and for certain purposes, the importance of free communication outweighs the interest in protecting reputation. See Restatement (Second) of Torts ch. 25, topic 3 scope note, at 258. Martin's statements were made in his official capacity as superintendent of the water department, and the public clearly had an interest in both the issues being investigated and the content of the allegations made by Martin.

However, a qualified or conditional privilege, unlike an absolute privilege, can be abused and lost in a number of different ways. *Bratt* v. *International Bus. Machs. Corp.*, 392 Mass. 508, 514 (1984). "One manner of such abuse is publication with knowledge of falsity or with reckless disregard of the truth." *Tosti* v. *Ayik*, 386 Mass. 721, 726 (1982). Our case law and the Restatement (Second) of Torts agree that recklessness is the minimum degree of misconduct required to forfeit a conditional privilege. *Bratt* v. *International Bus. Machs. Corp.*, *supra*. The abuse and loss of the defendant's conditional privilege in a defamation action can also be based on "unnecessary, unreasonable or excessive publication," provided the plaintiff proves that the defendant acted "recklessly." *Id.* at 515-516. Therefore, the privilege is abused when the communication is made in such a way as to unnecessarily, unreasonably, or excessively "publish it to others, as to whom the occasion is not privileged." *Galvin* v. *New York, N.H. & H.R.R.*, 341 Mass. 293, 297 (1960) (quotation omitted). Finally, a conditional privilege is abused and lost when it is determined that the defendant has acted with actual malice. See *ibid.*; *Tosti* v. *Ayik*, *supra*.

A conditional privilege may thus be recklessly abused and lost whether the fault lies in the misconduct of determining the truth of the material published or in the misconduct of unnecessarily, unreasonably, or excessively publishing the material.

consider the application of an absolute privilege because the conduct it has considered has been well within the limits of a conditional privilege. See *Vigoda* v. *Barton*, 348 Mass. 478, 484 (1965). See also Restatement (Second) of Torts § 591.

Here, the record shows that Martin had conducted an investigation between April and July of 2005 that included interviews with town employees and contractors connected to the events prior to confronting Barrows in July of that year. This did not amount to a reckless disregard of the truth.[11] When Martin first confronted Barrows with the allegations, Barrows's immediate supervisor was present. At Barrows's request, the next meeting included his union representatives. Later, Barrows requested that the hearing before the prudential committee be open to the public because he "wanted the public in on it to witness what had happened." This did not amount to an "unnecessary or unreasonable or excessive publication." Finally, Parola's affidavit, which stated that in the summer of 2002 Martin told her, "I am going to make it my mission to get rid of Kevin Barrows," does not establish that Martin was acting in bad faith and with malice three years after allegedly making the statement, nor does it indicate that he inadequately investigated Barrows's conduct.[12] The motion for summary judgment was properly allowed on count III.

*Judgment affirmed.*

---

[11]The judge specifically stated in his memorandum of decision that "Barrows has conceded that he and two other employees under his direction drove to the cemetery, and he loaded and brought back material to deposit behind the Water Department building. Barrows believes that some of the material may have been dumped in a wetlands buffer zone behind the building. Also, [two local contractors] recount that in 2004, Barrows . . . allowed them to dump material at the Water Department building. In the end, it cost approximately $150,000 to remove the material." Barrows does not dispute the judge's statement.

[12]Additionally, there was no evidence of any statements or actions by Martin indicating animus against Barrows in the years since the statement to Parola was allegedly made.