NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by E-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Hillsborough-northern judicial district
No. 2014-0773


SCOTT MCCARTHY

v.

MANCHESTER POLICE DEPARTMENT & a.

Argued: June 18, 2015
Opinion Issued: September 22, 2015


Backus, Meyer & Branch, LLP, of Manchester (B J Branch on the brief and orally), for the plaintiff.


McDonough, O'Shaughnessy, Whaland & Meagher PLLC, of Manchester (Robert J. Meagher on the brief and orally), for the defendants.


LYNN, J. The plaintiff, Scott McCarthy, appeals an order of the Superior Court (Nicolosi, J.) granting a motion to dismiss his defamation action against the defendants, the Manchester Police Department (MPD) and MPD Sergeant Craig Rousseau, on the grounds that municipal immunity bars his claim. We affirm.

I

The trial court found, or the record supports, the following facts. On April 8, 2011, William Socha was working on a construction site in

Manchester. At around noon, Socha noticed a truck parked on the site and went to tell the driver to move the vehicle. As he approached, he saw that the man in the driver's seat had his pants down, exposing his genitalia. Socha also observed a young female in the truck's passenger seat. The passenger appeared to Socha to be about twelve years old and to have some kind of disability, possibly Down syndrome.

Socha called the police, but, by the time an MPD officer arrived, the vehicle had left. Socha gave the officer a description of the truck, its license plate number, and a physical description of the driver. He described the driver as a white male in his forties with a "bigger" build and a balding hairline, and said that he was wearing a white "Sherwin Williams" sweatshirt. The police determined that the truck was registered to the plaintiff, who resided in Allenstown. A short time later, a detective from the Allenstown Police Department observed the plaintiff arrive at his residence in a truck matching the description and license plate number Socha had provided. The detective also observed that the plaintiff was wearing a white "Sherwin Williams" sweatshirt. The plaintiff told the detective that he had been in Manchester around 12:30 p.m. that day to pick up a friend and her daughter. The MPD filed a complaint charging the plaintiff with indecent exposure and lewdness, and arrested him pursuant to a warrant.

By April 11, the MPD had not identified the female passenger whom Socha had described. In an effort to identify her, Sgt. Rousseau posted an entry on the MPD blog, describing the incident and stating, in relevant part, that "[d]etectives of the MPD Juvenile Division now say that McCarthy, 41, was in fact the man who was exposing himself in the vehicle. McCarthy was subsequently arrested [and] charged with one count of indecent exposure." The entry then asked for information concerning the identity of the female passenger.

No passenger was ever identified. On the day of the plaintiff's criminal trial, Socha failed to come to court, and the State entered a nolle prosequi.

The plaintiff subsequently brought this action against the defendants, alleging that Rousseau's post on the MPD blog stating that the plaintiff was "in fact" guilty of the crime was defamatory. The defendants moved to dismiss, arguing that they were immune from suits that were not authorized by RSA chapter 507-B. See RSA 507-B:5 (2010) ("No governmental unit shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute."). The trial court construed the defendants' position to be that they were immune because the plaintiff's defamation claim constituted an intentional tort, which they argued was barred under RSA 507-B:5. The plaintiff objected to the motion. Initially, the trial court appeared to be of the view that RSA 507-B:2, an exception to municipal immunity, authorized suits

against municipalities for claims based upon negligent (or perhaps reckless) conduct, but not intentional conduct.  See RSA 507-B:2 (2010).  The court therefore considered whether defamation constituted an intentional tort under the statute.  Finding no New Hampshire authority on point, the court relied upon a Massachusetts appellate court decision which held that, under that state's municipal immunity statute, all forms of defamation fall within the statute's definition of an intentional tort for which municipalities are immune from suit.  See Barrows v. Wareham Fire Dist., 976 N.E.2d 830, 835 n.2, 838 (Mass. App. Ct. 2012).

Following Barrows, the trial court ruled that the plaintiff's claim constituted an intentional tort for purposes of RSA chapter 507-B.  It then concluded that, in order to avoid constitutional infirmity, the municipal immunity statute had to be construed consistently with the sovereign immunity statute, RSA 541-B:19 (2007), with respect to liability for intentional torts.  See Huckins v. McSweeney, 166 N.H. 176, 182 (2014); see also RSA 541-B:19, I(d) (providing that the state and state employees are immune from suit for "[a]ny claim arising out of an intentional tort, including . . . libel [and] slander . . . provided that the employee . . . reasonably believes . . . that his conduct was lawful, and provided further that the acts complained of were within the scope of official duties of the employee").  Consistent with RSA 541-B:19, I(d), the court found that the defendants would be entitled to immunity unless Sgt. Rousseau acted beyond the scope of his official duties or did not reasonably believe that his conduct was lawful, and the court ruled it would conduct a pretrial evidentiary hearing in order to make these determinations.

In response to the plaintiff's motion for reconsideration, the trial court clarified its original order.  The court recognized that a claim for defamation falls within the definition of "personal injury" under RSA 507-B:1, III(a) and that, unlike RSA 541-B:19, I(d), RSA 507-B:1, III(a) does not classify the types of claims that constitute "personal injury" as intentional torts.  See RSA 507-B:1, III(a) (2010) (defining "[p]ersonal injury" as "[a]ny injury to the feelings or reputation of a natural person, including but not limited to . . . libel, slander, or the publication or utterance of other defamatory or disparaging material").  The court explained, however, that whether the plaintiff's claim was for intentional defamation or for negligent defamation, the claim was excepted from municipal immunity under RSA 507-B:5 only if it arose "out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises."  RSA 507-B:2.

Because the plaintiff's defamation claim did not relate to motor vehicles or premises, the court next addressed the plaintiff's assertion that application of the municipal immunity statute so as to bar his claim would violate his right to equal protection of the law under Part I, Article 14 of the State Constitution.  See N.H. CONST. pt. I, art. 14.  Because the plaintiff's equal protection argument was based on the premise that he would have had a viable cause of

action if the defamatory conduct at issue had been committed by a state actor rather than a municipal actor, the court again considered the circumstances under which the sovereign immunity statute, RSA chapter 541-B, would bar the plaintiff's claim. After doing so, the court reaffirmed its original order that the plaintiff's claim would be barred by RSA 541-B:19, I(d) unless Rousseau (1) was acting beyond the scope of his official duties, or (2) did not reasonably believe that he was acting lawfully when he made the blog post. Noting that the plaintiff did not contest that Rousseau had acted within the scope of his duties, the court scheduled an evidentiary hearing to resolve the second issue.

Subsequent to the hearing, at which Rousseau testified, the court ruled as follows:

> In light of the facts known to Sergeant Rousseau at the time he made the blog post, the circumstances under which the post was made, and the content of the entire post, the sergeant reasonably believed that he was acting lawfully when he posted the blog entry and stated [the plaintiff] "was in fact the man who was exposing himself in the vehicle." Therefore, sovereign immunity, like municipal immunity, would bar plaintiff's defamation claim. In the absence of disparate treatment between the immunity statutes, application of the municipal immunity statute in this case does not violate equal protection, and thus is appropriate.

The court therefore granted the motion to dismiss. This appeal followed.

II

On appeal, the plaintiff raises two issues. First, the plaintiff argues that the trial court erred in ruling that defamation is always an intentional tort for purposes of the municipal immunity statute, RSA chapter 507-B, and that the trial court's reliance upon Barrows is misplaced. Second, the plaintiff contends that, assuming the trial court erred in classifying defamation as an intentional tort, the municipal immunity statute is unconstitutional insofar as it bars this action. The plaintiff asserts that, because RSA 541-B:19, I(b) implicitly waives sovereign immunity for negligence actions against the state, his negligent defamation action would succeed against a state actor. If true, the dissimilarity between the two statutory schemes results in the law treating individuals injured by municipal employee negligence differently from those injured by state employee negligence. This disparity, he contends, renders the municipal immunity statute violative of his equal protection rights under Part I, Article 14 of the New Hampshire Constitution.

The plaintiff's arguments require us to interpret both the municipal and sovereign immunity statutes. "Statutory interpretation is a question of law, which we review de novo." Appeal of Local Gov't Ctr., 165 N.H. 790, 804

4

(2014). "In matters of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of the statute considered as a whole." Id. "We first look to the language of the statute itself, and, if possible, construe that language according to its plain and ordinary meaning." Id. "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. "We construe all parts of a statute together to effectuate its overall purpose and avoid an absurd or unjust result." Id. "Moreover, we do not consider words and phrases in isolation, but rather within the context of the statute as a whole." Id. "This enables us to better discern the legislature's intent and to interpret statutory language in light of the policy or purpose sought to be advanced by the statutory scheme." Id.

RSA 507-B:5 provides that "[n]o governmental unit[1] shall be held liable in any action to recover for bodily injury, personal injury or property damage except as provided by this chapter or as is provided or may be provided by other statute." One exception to RSA 507-B:5 is set forth in RSA 507-B:2, which states, in relevant part, that "[a] governmental unit may be held liable for damages in an action to recover for bodily injury, personal injury or property damage caused by its fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of all motor vehicles, and all premises." "Personal injury" is defined, in relevant part, as "[a]ny injury to the feelings or reputation of a natural person, including but not limited to . . . libel, slander, or the publication or utterance of other defamatory or disparaging material." RSA 507-B:1, III(a).

We do not read the provisions of RSA 507-B:5 in isolation. Although the combined import of RSA 507-B:2 and :5 bars all tort actions against municipalities that do not have "a nexus between the claim and the [municipality's] ownership, occupation, maintenance, or operation of a motor vehicle or premises," Dichiara v. Sanborn Reg'l Sch. Dist., 165 N.H. 694, 696-97 (2013), in Huckins we held that "it is unconstitutional for the State to immunize itself or its municipalities from liability for intentional torts committed by government employees when those torts are not grounded on a reasonable belief in the lawfulness of the disputed act." Huckins, 166 N.H. at 182 (emphasis omitted). Consequently, for RSA chapter 507-B to be constitutionally valid, it must be construed to permit intentional tort claims against municipal actors who do not have a reasonable belief in the lawfulness

---

[1] Although Rousseau is not a "governmental unit" as RSA 507-B:1, I (2010) defines the term, RSA 507-B:4, IV (2010) provides, in part, that, in civil actions for damages, the chapter's provisions extend to a "present or former employee, trustee, or official of a municipality . . . so long as said employee or official was acting within the scope of his office and in good faith." The plaintiff has conceded that Rousseau was acting within the scope of his office. Because the plaintiff does not challenge Rousseau's good faith, we have no occasion to decide that issue and we therefore assume that Rousseau is a "governmental unit" for the purposes of this opinion.

5

of their conduct, regardless of whether the claims have a nexus to motor vehicles or premises.

The short answer to the plaintiff's first claim of error is that he is wrong in arguing that the trial court ruled that all defamation claims constitute intentional tort claims under the municipal immunity statute. Although the court's initial order on the motion to dismiss did contain some language to this effect, its ruling reconsidering that order recognized that the limitation on tort actions found in RSA 507-B:2 depends upon the nexus between the claim and motor vehicles or premises.[2] Thus, even if the plaintiff is correct in asserting that a claim for negligent defamation is cognizable under RSA 507-B:2, the claim at issue here does not meet the terms of that statute because it has no nexus with the defendants' ownership, occupation, maintenance, or operation of motor vehicles or premises. Accordingly, because there is no statutory authorization for the plaintiff's claim, it is barred by RSA 507-B:5.

This brings us to the plaintiff's constitutional challenge to the trial court's ruling. Although the plaintiff's brief is not entirely clear on the point, his argument appears to be that, because the sovereign immunity statute does not contain the exception for liability arising out of ownership, occupation, maintenance or operation of motor vehicles or premises found in the municipal immunity statute, compare RSA 541-B:19, I(b) with RSA 507-B:2, his claim for negligent defamation would be cognizable pursuant to RSA 541-B:19, I(b)[3] if brought against a state actor, thus demonstrating the type of disparate treatment of similarly situated persons that is prohibited by the State Constitution. The efficacy of this argument hinges upon the plaintiff's contention that RSA 541-B:19, I(d) bars defamation claims against state actors only in the case of intentional defamation. If, instead, RSA 541-B:19, I(d) also bars claims for negligent and reckless defamation against state actors, as the trial court decided, then the plaintiff's claim would fail even if the defendants

---

[2] There is some language in the trial court's orders indicating that it believed that only negligence claims could be brought under RSA 507-B:2. We note, however, that despite its title, "Liability for Negligence," the plain language of this provision allows suits against municipalities for intentional torts. RSA 507-B:2 allows a suit for "personal injury," which, under RSA 507-B:1 III(a) includes some intentional torts. See RSA 507-B:1, III(a) ("Personal injury" includes "false arrest, detention or imprisonment, malicious prosecution, libel, slander, or the publication or utterance of other defamatory or disparaging material, invasion of an individual's right of privacy, invasion of the right of private occupancy, [and] wrongful entry or eviction"). This is a clear and unambiguous statement that a plaintiff can bring an action for certain intentional torts, provided that the other requirements of RSA 507-B:2 are met. When the meaning of a statute is clear and unambiguous, we will not consider the title of the statute in determining the statute's meaning. See Appeal of CNA Ins. Cos., 143 N.H. 270, 274 (1998).

[3] RSA 541-B:19, I(b) exempts the state and state actors from liability for "[a]ny claim based upon an act or omission of a state officer, employee, or official when such officer, employee, or official is exercising due care in the execution of any statute or any rule of a state agency." The plaintiff contends that, under this provision, if a state actor is not exercising due care, i.e., is negligent, sovereign immunity does not apply. As explained in the text, we reject this argument because all claims for defamation against state actors fall within the purview of RSA 541-B:19, I(d).

6

here had been state actors, and the plaintiff, therefore, would not have been denied equal treatment.

We conclude that the trial court correctly determined that RSA 541-B:19, I(d) grants sovereign immunity against all claims for defamation arising out of the conduct of state actors, provided that they were acting within the scope of their official duties and with a reasonable belief that their conduct was lawful.

RSA 541-B:19, I(d) provides, in part, that the state does not waive its sovereign immunity for

> [a]ny claim arising out of an intentional tort, including . . . libel [and] slander . . . provided that the employee whose conduct gives rise to the claim reasonably believes, at the time of the acts or omissions complained of, that his conduct was lawful, and provided further that the acts complained of were within the scope of official duties of the employee for the state.

"Defamation is made up of the twin torts of libel and slander — the one being, in general, written while the other in general is oral . . . ." W. Keeton, Prosser and Keeton on Torts § 111, at 771 (5th ed. 1984); see also 50 Am. Jur. 2d Libel and Slander § 1 (2006) ("The tort of defamation includes libel and slander."). Liability for defamation has two distinct intent elements. See Duchesnaye v. Munro Enterprises, Inc., 125 N.H. 244, 250 (1984). First, a defendant can act either intentionally or negligently in communicating defamatory material. Id.; see also Restatement (Second) of Torts § 577, at 201 (1977). Second, when concerning a private person, a defendant can either "(a) know[] that the statement is false and that it defames the other, (b) act[] in reckless disregard of these matters, or (c) act[] negligently in failing to ascertain" the truth. Restatement, supra § 580B, at 221-22.

Nevertheless, regardless of whether a defendant intentionally publishes material that is negligently fact-checked or negligently publishes material that intentionally defames, the cause of action is the same: defamation.[4] We have found no controlling precedent, and the plaintiff points to none, that establishes intentional defamation and negligent defamation as two distinct causes of action.[5] In contrast, in the case of some other torts, the law

---

[4] Although a plaintiff may plead defamation as libel or slander, as discussed earlier, the distinction between the two concerns the mode of communication, not the intent of the tortfeasor.
[5] At oral argument, the plaintiff pointed to New York Times Co. v. Sullivan, 376 U.S. 254 (1964). That case, however, did not recognize separate intentional defamation and negligent defamation causes of action. It instead held that the Federal Constitution "prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice' — that is, with knowledge that it was false or with reckless disregard of whether it was false or not." New York Times, 376 U.S. at 279-80. New York Times simply requires a certain level of culpability upon the part of the tortfeasor before a

7

recognizes separate causes of action for intentional conduct, on the one hand, and negligent conduct, on the other. See, e.g., Morancy v. Morancy, 134 N.H. 493, 496 (1991) ("Having previously recognized the tort of negligent infliction of emotional distress, there is no logical reason why we should not now recognize the tort of intentional infliction of emotional distress."); Patch v. Arsenault, 139 N.H. 313, 319 (1995) (outlining the separate standards for intentional misrepresentation and negligent misrepresentation).

When the legislature placed libel and slander within the list of torts in RSA 541-B:19, I(d) for which sovereign immunity is not waived, and did not specifically define them in another way, we assume it gave the words their plain and ordinary meaning. See Local Gov't Ctr., 165 N.H. at 804. We conclude that, because libel and slander are not recognized as involving separate causes of action based upon the actor's mental state, the legislature intended to place those two torts, without regard to the intent with which they are committed, within the classification of "intentional torts" listed in RSA 541-B:19, I(d), as to which the state retains its sovereign immunity. Thus, the plaintiff's defamation action would have been barred even if the defendants had been state actors.[6]

Because both the municipal and sovereign immunity statutes bar the plaintiff's action, there is no disparate treatment under the law and thus no constitutional violation.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, CONBOY, and BASSETT, JJ., concurred.

---

public official can recover damages for defamation when his or her official conduct is the subject of the defamation. The case does not, however, purport to create separate causes of action based upon the mental state of the defendant.

[6] At oral argument, the plaintiff asserted that the issue of whether Sgt. Rousseau reasonably believed that his conduct was lawful was a matter for a jury to decide, and presumably that the trial court erred in making the determination based on a pretrial evidentiary hearing. Because the plaintiff neither raised this issue in his notice of appeal, nor addressed it in his brief, we decline to consider it. See State v. Blackmer, 149 N.H. 47, 49 (2003).