NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case.  A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-701

SHOGO HANAMURA[1] & another[2]

vs.

ALICE WHITTIER NEWTON & others.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendants appeal from an order denying their special motion to dismiss pursuant to the anti-SLAPP statute, G. L. c. 231, § 59H.  A principal purpose of the statute is "to obtain the expeditious dismissal of meritless claims that are based on petitioning alone."  Bristol Asphalt, Co. v. Rochester Bituminous Prod., Inc., 493 Mass. 539, 541 (2024) (Bristol

---

[1] Individually and on behalf of his minor children.

[2] Sara Hanamura, individually and on behalf of her minor children.

[3] Massachusetts General Brigham, Inc., doing business as Massachusetts General Hospital and formerly known as Partners Healthcare; Massachusetts General Hospital; Robert Sheridan; The Shriners Hospital for Children; Jane and John Does 1-100; Steven Chen; and Tyler Menge.

Asphalt).  The Superior Court judge denied the defendants'

special motion to dismiss, but allowed their motion under Mass.

R. Civ. P. 12 (b) (6), 365 Mass. 754 (1974), and dismissed all

but eight claims.  The remaining claims are based on allegedly

defamatory statements made against the plaintiff mother and

stepfather by a doctor who investigated and reported on the

alleged abuse and neglect of their child.  Because those claims

have no substantial basis in conduct other than or in addition

to the doctor's petitioning activity, and because the plaintiffs

cannot show that the doctor's petitioning activity was devoid of

any reasonable factual support or any arguable legal basis, we

reverse.

Background.[4]  We summarize the facts as alleged in the

pleadings, reserving certain facts for our discussion below.

The plaintiffs are the mother, stepfather, and four siblings of

A.W.  A.W. is a developmentally disabled child who is alleged to

have Kabuki syndrome, a rare genetic disorder that causes speech

delays, skeletal anomalies, short stature, and other

---

[4] No "supporting or opposing affidavits stating the facts
upon which the liability or defense is based" were filed in the
Superior Court in connection with the defendants' special motion
to dismiss.  See G. L. c. 231, § 59H.  Accordingly, we assess
the special motion to dismiss based on the facts alleged in the
plaintiffs' complaint, notwithstanding that many of those
alleged facts are disputed by the defendants.  See Bristol
Asphalt, 493 Mass. at 557-560.

2

abnormalities. In 2018, just before A.W.'s fourth birthday, the mother took her to an emergency room in New Hampshire for treatment of large blisters on her hands. A.W. was transferred to Tufts Medical Center, where she was diagnosed with "bilateral burns on both hands," and a social worker filed a report of suspected abuse or neglect under G. L. c. 119, § 51A, that was, according to the plaintiffs, "full of inaccuracies."

A.W. was transferred to Shriners Hospital for Children (Shriners) in Boston. Defendants Dr. Robert Sheridan and Dr. Alice Whittier Newton treated her there. Within a few days of A.W.'s admission, Dr. Sheridan told the mother that he believed A.W. had third-degree burns and would likely require skin graft surgery. According to the plaintiffs, Dr. Sheridan and other hospital personnel failed to consider the possibility that A.W.'s skin lesions were not burns because of "the outright lies perpetuated by Dr. Newton" that her prior skin lesions were "extremely painful," "never treated by a medical professional," and "took weeks to heal."

A social worker from Shriners notified the mother that the hospital would be sending "a letter to child protective services." The next day, Dr. Newton interviewed the mother for ten to fifteen minutes but did not "introduce herself as a child abuse specialist." The plaintiffs allege that, following the

3

interview, Dr. Newton inaccurately reported the mother's statements regarding A.W.'s medical history, including that A.W.'s skin problems began in New Hampshire, her prior skin lesions involved blistering skin, she was burned in a bathtub, and that the mother refused to bathe A.W. or left other siblings to take care of her. As a result, A.W.'s medical records allegedly contained inaccuracies that subsequently impacted her medical care. At some point, Shriners personnel cancelled Kabuki syndrome as a diagnosis on A.W.'s medical record.

Police officers interviewed the mother, the stepfather, and A.W.'s babysitter in New Hampshire. In August 2019, the mother and stepfather were indicted in New Hampshire Superior Court on criminal charges of abuse and neglect. They allege that the criminal charges were based in large part on misstatements set forth in Dr. Newton's records, reports, and prior testimony. Dr. Newton testified at the criminal trial in October 2019. According to the plaintiffs, although the criminal trial resolved in the mother's favor regarding three of A.W.'s siblings, "the conviction was sustained relative to A.W., largely due to Dr. Newton's testimony."

Upon being discharged from Shriners in October 2018, A.W. was placed in foster care. Since then, the mother "has been embroiled in extensive civil litigation in both New Hampshire

4

and New York related to the allegations of abuse and neglect" of A.W. and her siblings, and Dr. Newton has testified twice in those proceedings. In 2021, a court in New Hampshire terminated the mother's parental rights over A.W. based on findings from prior judicial proceedings that were supported by Dr. Newton's testimony.

The plaintiffs filed suit in September 2021. Their first amended complaint included claims for malpractice; gross negligence; racial, gender, and disability discrimination; negligent and intentional infliction of emotional distress; and defamation. In a joint special motion to dismiss, the defendants argued that the complaint should be dismissed under G. L. c. 231, § 59H, because it was based on Dr. Newton's petitioning activity and intended "to punish the defendants for the investigation of allegations of child abuse and subsequent cooperation with child custody and ongoing criminal actions" against the parents. Following a hearing, the judge denied the special motion to dismiss in its entirety because not all of the plaintiffs' allegations were "directed at conduct by the defendants that constitutes petitioning activity"; rather, some of the plaintiffs' claims were based "on defendants' allegedly poor medical treatment and misdiagnosis of A.W. and/or their treatment of [the parents] during A.W.'s hospital admission."

5

The judge also denied the defendants' motion to dismiss under the civil and criminal immunity provision in G. L. c. 119, § 51A (g) because "whether defendants acted in good faith requires factual development and is not appropriate for resolution on a motion to dismiss." Nevertheless, the judge dismissed on other grounds all but eight of the claims in the complaint for failure to state a claim under Mass. R. Civ. P. 12 (b) (6).[5] The remaining claims are two claims for defamation by the parents against Dr. Newton (counts 30 and 36), five loss of consortium claims by the minor plaintiffs limited by the judge to "the alleged defamation by Dr. Newton" (counts 8, 12, 15, 19, and 22), and a vicarious liability claim against Shriners, Massachusetts General Hospital, and Massachusetts General Brigham, Inc., doing business as Massachusetts General Hospital and formerly known as Partners Healthcare, that is limited "to the scope of the remaining substantive counts for defamation and loss of consortium" (count 38).[6]

---

[5] As the plaintiffs did not file a cross appeal, the correctness of the dismissal of their claims under Mass. R. Civ. P. 12 (b) (6) is not before us.

[6] The judge also granted the plaintiffs leave to file a newly amended complaint, but only with respect to the surviving eight claims and only against the defendants we have just listed. After the plaintiffs filed what was styled as a third amended complaint in accordance with the judge's direction, a separate and final judgment entered in favor of defendants Drs. Sheridan, Chen, Menge.

The remaining defendants now appeal from the denial of their special motion to dismiss under the anti-SLAPP statute and the denial of their claim to immunity under G. L. c. 119, § 51A (g).

Discussion. 1. Appealability. The defendants may pursue interlocutory appellate review from the denial of their special motion to dismiss. See Bristol Asphalt, 493 Mass. at 547, citing Fabre v. Walton, 436 Mass. 517, 521-522 (2002). Because we conclude that the defendants' special motion should have been allowed as to the remaining claims in the complaint, we need not decide whether the denial of their motion to dismiss on the ground of immunity under G. L. c. 119, § 51A (g), is also an appealable interlocutory order.

2. Standard of review. We review the Superior Court judge's ruling on the defendants' anti-SLAPP motion de novo. See Bristol Asphalt, 493 Mass. at 560-562.

3. The anti-SLAPP framework. In Bristol Asphalt, the Supreme Judicial Court revised the framework used to assess special motions to dismiss under G. L. c. 231, § 59H. See Bristol Asphalt, 493 Mass. at 554-560. As the court explained in a companion case, this revised framework applies to all cases in which an anti-SLAPP motion or appeal remains pending as of

the issuance of the rescript in Bristol Asphalt.  See Columbia Plaza Assocs. v. Northeastern Univ., 493 Mass. 570, 578 (2024).

Under this framework, a party may file a special motion to dismiss if "the civil claims, counterclaims, or cross claims against said party are based on said party's exercise of its right of petition under the constitution of the United States or of the commonwealth."  G. L. c. 231, § 59H.  At the first stage of the analysis, the proponent of the special motion to dismiss "must show that the challenged count has no substantial basis in conduct other than or in addition to the special motion proponent's alleged petitioning activity."  Bristol Asphalt, 493 Mass. at 555-556.  If the proponent cannot make this threshold showing, the special motion to dismiss must be denied.  Id. at 556.  If the proponent does show that the claim is based solely on the special motion proponent's petitioning activity, "the burden shifts to the special motion opponent."  Columbia Plaza Assocs., 493 Mass. at 577, citing G. L. c. 231, § 59H, first par.  At that second stage, "the special motion opponent must show by a preponderance of the evidence that the special motion proponent's petitioning activity (1) was devoid of any reasonable factual support or any arguable legal basis; and (2) caused the special motion opponent actual injury."  Id.  "If the special motion opponent makes both showings, the special

motion is denied.  Otherwise, the special motion is allowed."
Id.  See Bristol Asphalt.

4.  Application of the anti-SLAPP framework to the remaining defamation-based claims.  Applying the revised framework for assessing special motions to dismiss retroactively (see Columbia Plaza Assocs., 493 Mass. at 578) we conclude that the judge erred by not conducting the two-stage analysis on a claim-by-claim basis.  Although the judge correctly found that much of the plaintiffs' complaint is based on petitioning activity, he denied the special motion to dismiss because not all of the plaintiffs' allegations in the complaint were "directed at conduct by the defendants that constitutes petitioning activity."  The sufficiency of the special motion proponent's threshold showing, however, is evaluated "count by count."  Bristol Asphalt, 493 Mass. at 551, citing Duracraft Corp. v. Holmes Prod. Corp., 427 Mass. 156, 167-168 (1998).  The judge must assess each "particular claim" challenged by a special motion to dismiss, along with the factual allegations that provide the basis for that claim.  Bristol Asphalt, supra at 561.  The Supreme Judicial Court applied this approach in Columbia Plaza Associates, in which the court held that the special motion to dismiss was properly allowed as to a commercial fraud claim based entirely on the proponent's

9

petitioning activities, but not as to claims for unfair or deceptive acts in violation of G. L. c. 93A, § 11, that were not "based solely on its petitioning activity." See Columbia Plaza Assocs., 493 Mass. at 578-80.

To be sure, after the Supreme Judicial Court's ruling in Bristol Asphalt, judges may no longer "parse the factual allegations underlying each claim to determine whether a portion of the opponent's cause of action could be construed as being based on the proponent's petitioning alone." Bristol Asphalt, 493 Mass. at 554. If the judge determines that part of a claim is based on a proponent's "substantial conduct other than or in addition to the petitioning activities," the special motion to dismiss must be denied as to that claim. Id. at 554-556. Here, all eight remaining claims, as limited by the judge, (including the minor plaintiffs' loss of consortium claims and the vicarious liability claim against the hospitals) are based solely on the factual allegations that support the parents' defamation claims against Dr. Newton.

When pleading a claim for defamation, a plaintiff must plausibly allege four elements: "(1) the defendant published a defamatory statement of and concerning the plaintiff; (2) the statement was a false statement of fact (as opposed to opinion); (3) the defendant was at fault for making the statement, and any

10

privilege that may have attached to the statement was abused; and (4) the plaintiff suffered damages as a result, or the statement was of the type that is actionable without proof of economic loss." Lawless v. Estrella, 99 Mass. App. Ct. 16, 18-19 (2020). Cf. Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 628 (2012) ("Defamation is essentially spoken or written words or expressions that injure reputation.") Thus, for an allegation to serve as the basis for any of the eight remaining claims, it must involve a statement allegedly made by Dr. Newton concerning the parents. Allegations about A.W.'s medical treatment, the hospital's treatment of the parents, and other nonexpressive conduct are irrelevant to the special motion to dismiss framework as it applies to those claims.

As the plaintiffs acknowledged at oral argument, all of the statements allegedly made by Dr. Newton fall into three categories: (i) statements written in medical reports or notes, (ii) statements made to other hospital or medical personnel, and (iii) statements made to police or while testifying as a witness in a civil or criminal proceeding. In particular, Dr. Newton is alleged to have recorded false information about A.W.'s medical history in her charts, made statements depicting the parents as child abusers and neglectors, and testified against them in

11

court proceedings that resulted in A.W.'s removal from the parents' custody and their indictment on criminal charges.

Those alleged statements constitute petitioning activity under the anti-SLAPP statute. The definition of petitioning activity includes "any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding [and] any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding." G. L. c. 231, § 59H. To satisfy the "'in connection with' definition of petitioning. . . a communication must be 'made to influence, inform, or at the very least, reach governmental bodies -- either directly or indirectly.'" (citation omitted). Blanchard v. Steward Carney, Hops., Inc., 477 Mass. 141, 149 (2017) (abrogated on other grounds). In Massachusetts, doctors and other hospital workers are required to report suspected child abuse and neglect to the Department of Children and Families, and "a mandated reporter may in addition to filing a report under this section contact local law enforcement authorities or the child advocate about the suspected abuse or neglect." G. L. c. 119, § 51A (a). Statements made in reports or notes or to other medical personnel by Dr. Newton, based on her examination of A.W. or

12

interview of her parents, are petitioning activity because they involve "a plausible nexus between the statement" and a governmental proceeding concerning possible child abuse. Blanchard, 477 Mass. at 149. Similarly, statements made by Dr. Newton in related civil and criminal proceedings are petitioning activity because the "archetypical demonstration of this nexus involves a party's statement regarding an ongoing government proceeding made directly to a governmental body." Id. The defendants therefore met their threshold burden, as the special motion proponents, with respect to the remaining defamation-based claims.

Under the second stage of the analysis, the burden shifts to the plaintiffs to show, by a preponderance of the evidence, that Dr. Newton's petitioning activity "(1) was devoid of any reasonable factual support or any arguable legal basis; and (2) caused the special motion opponent actual injury." Columbia Plaza Assocs., 493 Mass. at 577. Because the plaintiffs did not submit an opposition in the Superior Court to the defendant's special motion to dismiss, there are no affidavits in the record "stating the facts upon which the liability . . . is based." G. L. c. 231, § 59H. We conclude that the plaintiffs cannot meet their burden in any event because their own complaint establishes that Dr. Newton's statements have been credited by

13

several courts in proceedings involving the parents' allegedly abusive or neglectful treatment of A.W.  For example, the plaintiffs allege that the mother's parental rights over A.W. were terminated in May 2021 "based on the findings of prior Court proceedings in which social services' position was supported with testimony from Dr. Newton."  They further allege that a criminal conviction of the mother in New Hampshire Superior Court was sustained relative to the abuse or neglect of A.W. "largely due to Dr. Newton's testimony."  We acknowledge that the parents may have denied the charges and allegations against them in some of these proceedings, and some of the judgments may still be subject to appeal.  Nevertheless, the judgments conclusively establish that Dr. Newton's petitioning activity is not "devoid of any reasonable factual support or any arguable legal basis."  See Columbia Plaza Assocs., 493 Mass. at 581 (allowing special motion to dismiss where, at second stage, proponent's statement "was squarely supported by the judge's ruling" in related civil litigation); see also Fabre, 436 Mass. at 524-525 (judgment entered in G. L. c. 209A proceedings was "conclusive evidence that the petitioning activity was not devoid of any reasonable factual support or arguable basis in

14

law.")  Accordingly, the remaining defamation-based claims in this case warrant dismissal under G. L. c. 231, § 59H.[7]

Conclusion.  So much of the September 1, 2022 order denying the special motion to dismiss in part and allowing the plaintiffs' motion to file a third amended complaint is reversed.  The third amended complaint is struck.  A judgment shall enter dismissing the first amended complaint.

So ordered.

By the Court (Neyman,
  Brennan & Toone, JJ.[8]),

Assistant Clerk

Entered:  May 28, 2024.

---

[7] Because we conclude that the special motion to dismiss should have been allowed as to the remaining eight claims based solely on the allegations in the complaint, we deny as moot the motion filed by the defendants in this court to supplement the record to reflect developments in the parents' criminal cases.

[8] The panelists are listed in order of seniority.